COMMONWEALTH vs. ALBERT LOMBARDO
(and three companion cases [1]).

Norfolk.    October 16, 1974. — November 27, 1974.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Practice, Criminal,* New trial, Disclosure of evidence.    *Witness,* Impeachment.

Motions by the defendants in criminal cases for a new trial based on the ground that the prosecution had suppressed information concerning its failure to prosecute a material witness for the Commonwealth for alleged participation in the crimes charged against the defendants were properly denied where, although there was evidence that the witness had been told by the prosecutor that it would be "better" if he testified, the defendants failed to prove any agreement with the witness, or any promise or inducement communicated to him, with respect to his testifying. [668-673]

INDICTMENTS found and returned in the Superior Court on June 4, 1970.

The cases were tried before *Ford,* J., and motions for a new trial were heard by him.

*Howard K. Simmons* for the defendant Albert Lombardo.

*Raymond J. Daniels* for the defendant Kenneth J. Viera.

*Paul F. Malloy,* Assistant District Attorney, for the Commonwealth.

GRANT, J.    On June 30, 1971, in proceedings held under G. L. c. 278, §§ 33A-33G, a jury convicted Albert Lombardo and Kenneth J. Viera on separate indictments

---

[1] Two of them against Kenneth J. Viera and another against Albert Lombardo.

charging them with (1) an assault on one Kevin George with a dangerous weapon (a revolver) with intent to murder him and (2) unlawfully carrying a revolver in a motor vehicle. Lombardo duly filed and prosecuted an appeal from his convictions. Both defendants appealed from the denial of motions for a new trial which were filed in July of 1971 and were based on grounds which no longer concern us. Those appeals were entered in this court on September 27, 1972.

All the convictions rested largely on the testimony of one Kevin Boily, arguably a participant in the material events, who identified Lombardo as the principal assailant and implicated Viera in the commission of both offences. On November 14, 1972, both defendants filed virtually identical motions for a new trial on the "ground of newly discovered evidence." This court was advised of the pendency of those motions and deferred the argument of the original appeals until after the denial of the motions on July 12, 1973. Lombardo's convictions and the orders denying the 1971 motions for a new trial were subsequently affirmed by this court. *Commonwealth* v. *Lombardo, ante,* 387, 392 (1974). We declined at that time to consider the denial of the 1972 motions because the factual bases for those motions were not in the record then before us. The denials of those motions are now before us on further records and appeals.

Attached to the motions are affidavits of present counsel for both defendants[2] which contend that constitutional error was committed in the course of the trial in the respect that the prosecution allegedly suppressed material evidence concerning its intention not to prosecute Boily for his part in the commission of the offences for which the defendants were indicted. The factual support for that contention consists of copies (attached to

---

[2] The Superior Court approved a substitution of counsel for Viera prior to the filing of the motions now under consideration. There has been no change of counsel for Lombardo.

the motions) of (a) certain court records pertaining to Boily during the period between the date of the offences (April 11, 1970) and the time of trial (June 23 through 30, 1971) and (b) a newspaper article appearing in the July 2, 1971, issue of the Providence Journal (two days after the verdicts) which related the verdicts and attributed to the assistant district attorney who had tried the cases a statement to the effect that charges against Boily had been dropped when he had agreed to serve as a material witness in the trial of Lombardo and Viera. The district attorney and the assistant district attorney thereafter (in May of 1973) filed affidavits which controverted the factual support for the defendants' contention.[3]

The motions were submitted to the trial judge on the opposing affidavits (and attachments) and on agreed portions of Boily's testimony at the trial. No witnesses were called. The judge, in denying the motions, summarized portions of the evidence at trial, found as facts the matters set out in the prosecution affidavits, found and ruled that the defendants had failed to prove the allegations of their motions, and found and ruled that there had been no violation of the defendants' constitutional rights in the circumstances. We find no error in those actions.

The court records pertaining to Boily disclose that on April 17, 1970, a complaint issued from a District Court charging him with having committed an assault on Kevin

---

[3] The district attorney's affidavit includes the following: "[A]t no time either prior to the indictments being returned or subsequent thereto have I or members of my staff communicated to Kevin Boily an offer of immunity or any inducements in return for his testimony as a Commonwealth's witness in the prosecution of Kenneth Viera and Albert Lombardo. The above facts are true to the best of my knowledge and belief." The assistant's affidavit contained the following: "I never participated in any negotiations with Kevin Boily, the Commonwealth's material witness, relative to immunity from prosecution. However, it was my understanding that he was not to be prosecuted for his participation in the aforementioned matter. I do not recall from what source I received that information."

George with intent to murder and while armed with a dangerous weapon. Boily was brought into the District Court on April 21, 1970, on an arrest warrant and pleaded not guilty. The case was continued until April 27, 1970, when the District Court found probable cause and ordered Boily to recognize in the sum of $50,000 (double surety) for his appearance in the Superior Court at a sitting for the transaction of criminal business which was to commence on June 1, 1970. Boily did not so recognize and was committed to the jail in Dedham. The indictments against Lombardo and Viera were returned by the grand jury on June 4, 1970. As appears from the dockets in these cases, on June 5, 1970, the Superior Court, acting on the petition of the district attorney, ordered Boily held in $5,000 bail (single surety) as a material witness on all four indictments. On the same day the Superior Court allowed a motion filed by an assistant district attorney to discharge the bail originally set by the District Court. That motion recited that the grand jury had taken no action on Boily's case and had continued it to the next sitting of the grand jury for further action. Boily was thereupon released and appears to have remained at liberty until the time of trial.[4]

We summarize the pertinent portions of Boily's testimony at trial, all of it elicited on cross-examination by the then counsel for the defendants. Boily was arrested by the Rhode Island State police near his home in Providence in the afternoon or evening of April 20, 1970. He discussed the case with both the Rhode Island police and the Massachusetts State police before being taken to the District Court the following morning. He knew when he was taken to court, and later when he was committed to

---

[4] All these facts had been matters of public record for more than a year prior to the commencement of the trial. The defendants no longer argue that they were "newly discovered" at the time when the present motions were filed on November 14, 1972.

the jail in Dedham in $50,000 bail, that he was being charged with "attempted murder." He knew that crime to be at least as serious as the one with which Lombardo and Viera were charged. On two occasions while at Dedham Boily talked with an officer of the Massachusetts State police, not in the jail but when "he went to court." He was aware (from a source he could not identify) that the district attorney "wanted to see" him. He talked with the district attorney early in June of 1970 upon an occasion when he was taken to court; up until that time nobody had said anything to him about being "able to work out a deal." He decided to testify for the Commonwealth because "I thought it was the right thing to do." "I told him I wanted to testify, and I told him what happened."[5] He denied that the district attorney made him any offer for his testimony or told him, "I will put you right on the street." "He didn't say nothing. He said it would be better for me to testify." Boily denied that he was told that he would not be prosecuted; the district attorney's final words were, "It will be better for you." Boily testified before the grand jury, after consulting with the police officers and the district attorney, but not at their request or behest; he testified "of . . . [his] own free volition." It was at that time (June of 1970) that "they discharged" or "dropped" a charge. It was then that "I got out on bond." Boily appeared in court again in April of 1971 when the indictments against Lombardo and Viera were first called for trial. He testified that at that time he was "still being charged with something," that that was the last time "[he] appeared as a defendant," and that nothing happened about "returning as a defendant." He did not know whether he was "still a defendant" at the time of trial.

---

[5] Boily testified on redirect examination that what he told the district attorney was what he had already told the Rhode Island and Massachusetts police at the time of his arrest.

The only other evidence offered in support of the
motions consisted of the aforementioned newspaper
article. It is not contended that the judge was obliged to
believe the statements in that article concerning an
arrangement for Boily's testimony. Compare *Common-
wealth* v. *Cassesso*, 360 Mass. 570, 575 (1971). Nothing
in the court records pertaining to Boily required, if any-
thing therein even permitted, a finding by the judge that
the district attorney or any member of his staff had made
any promise to or agreement with Boily or had offered
him any form of inducement for his testimony, either
before the grand jury or at trial. The judge would not
have been warranted in torturing Boily's repeated denials
at trial into evidence of an agreement, promise or in-
ducement. We concur with the thought expressed by the
judge during the course of the hearing on the motions,
that the most that was shown was a unilateral decision
on the part of the district attorney not to prosecute Boily
if he should testify to what the district attorney thought
he knew.[6] If any such decision was made, it does not
appear from this record that the decision was communi-
cated to Boily. It necessarily follows that the prosecution
has not been shown to have suppressed any evidence
which could have affected Boily's credibility in the minds
of the jury.

The case of *Giglio* v. *United States*, 405 U. S. 150
(1972), is distinguishable. In that case a conviction was
reversed because a member of the prosecution remained
silent while the government's key witness denied at trial
that he had been promised immunity when the fact (as
established by a government affidavit) was that another
member of the prosecution had earlier promised the
witness immunity in return for his testimony before the
grand jury. The distinction between the *Giglio* case and

---

[6] We also concur with the judge's remark that it would have been
better practice for the trial prosecutor to have revealed the precise
state of affairs to the defendants.

the present cases is clear; in the present cases the defendants have failed to sustain the burden of proving an impropriety on the part of the prosecution.[7]

Nor can we accept the reasoning of, or the result reached by, the majority of the court in *Burkhalter* v. *State*, 493 S. W. 2d 214 (Texas Cr. App. 1973), cert. den. 414 U. S. 1000 (1973). We endorse the following thoughts expressed in the dissenting opinion filed by Morrison, J., in that case: "[T]he prosecution's intention is not the critical factor. The rationale for permitting the jury to hear about an 'arrangement' is that such information may be a factor for determining the witness' credibility. The witness' motives and bias, then, are the controlling element. It, therefore, follows that the jury need not be given more information than the witness himself actually possesses." 493 S. W. 2d at 219. We think that in the present cases the jury heard more than the defendants offered to show at the hearing on their motions.

The orders denying the motions for a new trial filed on November 14, 1972, are affirmed.

*So ordered.*

---

[7] Indeed, the defendants all but concede in their brief that the *Giglio* case does not apply unless the article in the Providence Journal was correct.