COMMONWEALTH *vs.* RONALD ANTHONY CASSESSO
(and a companion case).

Suffolk.   October 5, 1971. — December 8, 1971.

Present: CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Practice, Criminal,* New trial, Disclosure of evidence.

Statement of certain principles applicable in the disposition of a
    motion for a new trial of a criminal case. |575-576|
A prosecutor's duty to disclose marginally useful items of evidence to
    the defence must be measured by the directness of the materiality
    of the evidence in question together with the sheer volume of all of
    evidence in hands of the prosecution. |575|
No error in denial of motions for a new trial by defendants in a capital
    case appeared where the motions and supporting affidavits did not
    present facts or supportable sworn offers of proof of expected
    admissible evidence or sufficient basis for charges of suppression
    showing abuse of the judge's discretion or requiring as matter of
    law a new trial or even an evidential hearing on the motions.
    |576-579|

INDICTMENTS found and returned in the Superior Court
on October 25, 1967.

Motions for a new trial were heard by *Forte,* J.

*David Berman* for the defendant Limone (*Ronald J.
Chisholm,* for the defendant Cassesso, with him).

*Jack I. Zalkind,* Assistant District Attorney, for the
Commonwealth.

CUTTER, J.   Cassesso and Peter Joseph Limone were
found guilty as accessories before the fact of the murder
(on March 12, 1965) of Edward Deegan and of conspiracy
to murder Deegan and Anthony Stathopoulos.   Each of
these defendants is under sentence of death.   The facts
which appeared at trial are stated at length in *Common-*

*wealth* v. *French,* 357 Mass. 356. In that case, this court affirmed the judgments.*

Each of these two defendants now has filed a motion for a new trial. Each motion purports to be supported by, or refers to, three affidavits (one of Mr. David Berman, counsel for Limone, dated May 6, 1970, one of William W. Stuart, apparently verified twice, viz. July 29, and August 4, 1970, and a brief and somewhat cryptic affidavit of Joseph Baron [also known as Barboza] dated July 28, 1970).

The Superior Court judge who presided at the original trial held a hearing on the motions on October 14, 1970. After examining one of the affidavits, the judge indicated he would "give counsel an opportunity to amend and put in affidavit form the evidence that would be offered in case there would be a new trial." At a later stage in the hearing, counsel for a defendant (Henry Tameleo) who, on this record, is not shown to have appealed from any denial of his motion for a new trial, informed the judge that he was "in process of obtaining other affidavits" and asked for additional time "to prepare affidavits that very well might be persuasive." The judge reiterated his intention, "if the district attorney's argument was well founded" to deny the motions, "but [to] give the defendants opportunity to amend, with additional affidavits" and that the denial would be "without prejudice" in all instances. Counsel for Tameleo then asked for thirty days in which to prepare additional material.

Counsel for Limone (Mr. Berman) contended that the issue then before the judge was "not whether there should be a new trial, but whether there should be evidence heard on . . . whether there should be a new trial." Mr. Berman,

---

* On June 29, 1972, the Supreme Court of the United States granted certiorari sub nom. *Limone* v. *Massachusetts* in the present cases and in *Commonwealth* v. *French,* vacated the judgments, but only insofar as they left undisturbed the death penalty imposed, and remanded the cases for further proceedings. 408 U.S. 933, 936. This was done in connection with the decision in *Furman* v. *Georgia,* 408 U.S. 238. See *Stewart* v. *Massachusetts,* 408 U.S. 845. REPORTER.

in effect, conceded "that the matters contained in the . . . sheets" attached to his own affidavit (described below) were hearsay, but requested an evidential hearing so that he might establish through other witnesses (apparently Officer John Doyle and Officer Thomas Robson) whether the "sheets" were a copy of an authentic, existing report. The judge pointed out to Mr. Berman that he could interview the persons mentioned in his affidavit and the attached sheets and submit later their affidavits. After a somewhat inconclusive discussion, the judge in effect ruled that Mr. Berman's affidavit was hearsay, and "on that ground," subject to an exception saved for all defendants, denied his motion for an evidential hearing on his own affidavit.

At the close of the hearing, the judge concluded (with respect to all the affidavits) that he would not deny the motions for new trials but allow the defendants thirty days to amend the motions and to file affidavits. The docket entries in the two cases now before us are set out in part in the margin.[1] Their motions were denied on November 17, 1970, after the thirty day period had expired, without the filing of any additional affidavits or other material. Cassesso and Limone appealed.

### The Affidavits.

A short summary of each affidavit will facilitate discussion of the case.

(a) *The Baron affidavit.* Baron had been a vital, principal prosecution witness at trial. As was stated in *Commonwealth* v. *French*, 357 Mass. 356, 397 (hereafter cited *French*, p.___), "the principal issue before the jury was one of Baron's credibility." He was obviously "a highly vulnerable witness" with "a long criminal record." His

---

[1] "Oct. 14, 1970. Hearing on motion for new trial — Court defers finding and allows thirty days for counsel to file amendments to motions. . . . [A]ll defense counsel present. . . . Nov. 17, 1970. Commonwealth's motion to dismiss filed and allowed — Court orders defendant Limone's and Cassesso's motion for new trial denied and exceptions saved — motion to dismiss impounded . . . ."

present affidavit of only fifteen printed lines (as it appears in the record) recites that he was "free from duress or coercion"; that he wishes "to recant certain portions of . . . [his] testimony during . . . trial insofar as . . . [his] testimony concerned the involvement of Henry Tameleo, Peter J. Limone, Joseph L. Salvati and Lewis Grieco in the killing of Teddy Deegan," and that the testimony (not described) which he now offers "to give concerning the killing of . . . Deegan and those individuals responsible for his death will be the whole truth known to" him. There is no further substantive specification concerning (a) the parts of his trial testimony which he wishes to recant, (b) the testimony which he will give if there is a new trial, or (c) the place at which, or the circumstances in which, this affidavit was given.

(b) *The Stuart affidavit.* Stuart states (as of August 4, 1970) that he is a forty-one year old police officer, assigned to the intelligence section of the Boston police force, and then proceeds to assert the following matters, among others. On March 14, 1965, he interviewed Edward Bennett (unidentified) who told him that Baron, Roy French, "Stats" (later identified as Stathopoulos), Chico Amico (See *French*, p. 363, fn. 5), one Chiampa, Romeo Martin, and Cassesso participated in the Deegan murder. Stathopoulos and French led Deegan into an alley where all (except Stathopoulos and French) killed Deegan. Bennett said that Baron had told him the reason for killing Deegan was his friendship with enemies of a gang with which Baron was friendly. This information Stuart says he reported to Deputy Superintendent Blake, although Bennett was not identified in that report. Soon thereafter Stuart twice interviewed Martin (died or killed July 9, 1965; see *French*, p. 363, fn. 5, which contains an extended necrology of persons directly or indirectly connected with the trial), who had been (but then was no longer) an informant for him. Martin denied all direct knowledge of the killing but said he had been at the Ebb Tide Lounge in Revere with the

persons named by Bennett. He gave what purported to
be a hearsay report of the murder similar to that given by
Bennett but (apparently by inadvertence) at the "end of
the narration, he said: '*I* saw somebody get the number of
*my* registration plate as *we* were leaving the scene.'"
Stuart in his affidavit claims that, in the summer and fall
of 1967, but prior to October 25, 1967, he reported these
conversations to Officer John Doyle, permanently assigned
to the office of the district attorney for Suffolk County. No
facts are set out in the affidavit concerning the circumstances
in which the Stuart affidavit was given or the motives or
inducements for giving it.

(c) *Mr. Berman's affidavit.* Mr. Berman states in his
affidavit dated May 6, 1970, that on "May 5th or May 6th,
1970 an unknown person delivered to his office in a plain
white envelope the pages, true copies of which are annexed
to this affidavit. Affiant has never before . . . been aware
of their existence. According to affiant's information and
belief these pages are part of a report prepared for and by
Officer John Doyle," and "this report was prepared before
the [Superior Court] trial" of the defendants. Mr. Berman
asserts that the report is "substantially inconsistent with
testimony given against . . . Limone by . . . Baron and
. . . Stathopolous [*sic*]." Also "[a]ccording to affiant's
information and belief neither this report not [*sic*] the con-
tents . . . were ever divulged to any person representing
. . . Limone nor [*sic*] to . . . Limone himself, . . . [or]
to any person likely to bring the contents . . . to the at-
tention of . . . Limone or his counsel", but they were "avail-
able to the Assistant District Attorney who prosecuted the
case against Peter Limone in the Superior Court." Beyond
the statements quoted above, nothing appears of the cir-
cumstances in which Mr. Berman gave his affidavit. At-
tached to the affidavit is a document headed "John Doyle's
Office 1–236 238–499 on September 8 — Stathopolous [*sic*]."
This referred to a trip about September 8, 1967, to Maine by
M. D. C. Officer Robson and State Trooper Endorato to

pick up Stathopoulos and take him to Massachusetts.
That afternoon an interview between Stathopoulos and
Baron took place near Barnstable. Stathopoulos was re-
ported as having then told a story of the Deegan murder
which need not be repeated here. We assume, as Mr.
Berman asserts in his brief, that the story may contain some
"prior inconsistent statement by Stathopolous [*sic*] [which]
would" or might tend, at least indirectly, to impeach his
credibility, and that the statement also may be in some re-
spects arguably inconsistent with parts of Baron's testi-
mony.

1. We have recently said that, upon "a motion for a new
trial based upon recantation by a material witness, the duty
of the trial judge is to give grave consideration to the credi-
bility of the witness's new testimony" and that "the mo-
tion is addressed to his sound judicial discretion." *Com-
monwealth* v. *Robertson,* 357 Mass. 559, 562. See *Common-
wealth* v. *Gwizdoski,* 284 Mass. 578, 581. See *Batsell* v.
*United States,* 403 F. 2d 395, 402–403 (8th Cir.), cert. den.
393 U. S. 1094. This is in line with the usual rule that such
motions are addressed to the sound discretion of the court.
See *Commonwealth* v. *Devereaux,* 257 Mass. 391, 397–399.
See also *Commonwealth* v. *Heffernan,* 350 Mass. 48, 52–54,
cert. den. 384 U. S. 960. The judge was not obliged to be-
lieve the affidavits (see *Coonce* v. *Coonce,* 356 Mass. 690,
692).[2] The "possibility that the alleged newly discovered
evidence might affect the result would not require," as

[2] We do not accept the extreme interpretation by defence counsel of
*Cochran* v. *Kansas,* 316 U. S. 255, 257–258 (prison officials' suppression of
appeal documents); *Pyle* v. *Kansas,* 317 U. S. 213, 215–216 (prosecution's
alleged knowing use of perjured testimony); and *Williams* v. *Kaiser,* 323
U. S. 471, 473–477 (denial of counsel in capital case). These decisions (as we
read them) do not purport to require a judge to accept as true allegations
concerning the facts of alleged crimes contained in affidavits filed in support
of motions for new trials. Those three cases seem to rest upon the prosecu-
tion's failure to controvert specific post-conviction allegations made by an
apparently unrepresented prisoner about particular denials (during a prosecu-
tion) of his constitutional rights, which allegations, if true, required relief.
The situation is unlike that here presented where the affidavits either in-
adequately set forth the facts relied on for relief or set forth largely (but
probably not entirely) inadmissible expected hearsay testimony concerning
the circumstances of a crime.

matter of law, the granting of a new trial. Such evidence, merely going to impeach the credit of a witness, will not ordinarily be the basis of a new trial. See *DeLuca* v. *Boston Elev. Ry.* 312 Mass. 495, 499–501; *Commonwealth* v. *Heffernan*, 350 Mass. 48, 54. The principles, stated above, apply to criminal as well as to civil cases, and, at a hearing on such a motion, the Massachusetts practice does not require (see *Commonwealth* v. *Millen*, 290 Mass. 406, 410) that the judge hear oral testimony. Indeed, such "motions . . . in both civil and criminal cases ordinarily are heard on the facts as presented by affidavit." *Commonwealth* v. *Coggins*, 324 Mass. 552, 556–557, cert. den. 338 U. S. 881. We consider the various issues raised in the light of these decisions.

2. The Baron affidavit is on its face indefinite and vague. It has no direct tendency to exonerate Cassesso for Baron does not purport to recant any testimony about Cassesso. It contains no statement showing the substance of the changed evidence which Baron would give about any of the other defendants, if afforded the opportunity. We see no abuse of discretion on the part of the judge in denying either Cassesso's motion or that of Limone so far as based upon this affidavit. The judge afforded counsel full opportunity to supplement their motions and this affidavit. The time granted by him expired without action in behalf of these defendants. It is open, of course, to each of these defendants to file a new motion for a new trial, if they become able to expand Baron's affidavit. See G. L. c. 278, § 29 (as amended through St. 1966, c. 301); *Commonwealth* v. *Kerrigan*, 349 Mass. 295, 296–297.[3]

3. Stuart's affidavit is largely, if not entirely, hearsay. It

---

[3] Although no abuse of discretion appears, it was open to the judge in his discretion to receive evidence, or to require affidavits, tending to establish in what circumstances Baron's affidavit was obtained, whether pressures had been exerted upon him, and what considerations may have affected him, as well as indication of the substantive new testimony he proposed to offer. Similar considerations might have led the judge to comparable evidential inquiries at least about the circumstances in which the other affidavits were given.

implicates Cassesso in the murder. It mentions the names of several potential witnesses not shown to have died. There is little in it to which Stuart could have testified directly. It was not unreasonable (so far as concerns the substance of what was there set forth) for the judge to fail to take action on it, until the defendants had exhausted the possibility of obtaining direct affidavits from persons mentioned in the affidavit, as the judge suggested might be done. No affidavit before us establishes (a) that obstacles have been put by the prosecution in the way of proper inquiry by defence counsel of any potential witness referred to in the Stuart affidavit; (b) that Stuart has been denied opportunity to supplement that affidavit if he can; (c) that any potential witness mentioned has been asked and has refused to talk to defence counsel; or (d) that defence counsel have been obstructed in access by the Commonwealth or its officers to any person mentioned in these affidavits and documents.

4. Mr. Berman's affidavit does not state the source of his information or the facts (apart from the document itself) which form the basis for his sworn statement, on "information and belief," that the document attached to his affidavit is "part of a report prepared for and by Officer . . . Doyle," or that the alleged report was "prepared before the [Superior Court] trial," or that it was "available to the" trial prosecutor. He states that he "has never before seen these pages, nor has he been aware of their existence," but he does not go so far as to assert that he had no knowledge of at least some of the matters mentioned in the document. The affidavit also does not go so far as to establish any direct and adequately specific request to the prosecution for documents of this type during or prior to trial, nor does it set forth relevant facts (with particular references to portions of the former record and of the 7,555 page trial transcript) which establish a duty on the part of the Commonwealth to disclose this report, even if the assistant district attorney

was aware of it.[4]    See *French,* p. 399, pars. A–2, A–3.

We have recently stated that "the prosecutor's duty to disclose must be measured by the directness of the materiality of the . . . evidence in question to the defence taken together with the sheer volume of all the evidence in the hands of the prosecution." See *Commonwealth* v. *Beneficial Fin. Co. ante,* 188, 318 (a case where, of course, there was a much larger volume of potential documentary evidence than in the *French* case). Particularly is this true (p. 318) with respect to a "marginally useful item of evidence." The sworn facts set out in Mr. Berman's affidavit do not establish that this alleged report, even if authenticated, was more than "marginally useful" in view of the exhaustive examination of Stathopoulos at trial or that persons investigating Deegan's murder had any substantial reason to rely on its accuracy, if they knew about it.[5]

We are of opinion that, in the present cases, the attorneys for these defendants thus far have not presented facts, made supportable sworn offers of proof of expected admissible evidence, or shown sufficient basis for charges of

---

[4] The alleged police report has no direct tendency to exonerate Cassesso for it quotes Stathopoulos as saying "that he actually saw . . . Cassessa [*sic*] with a gun in his hand that night." Mr. Berman asserts in his brief that this alleged report would have been useful at trial, if established as authentic, as a basis of casting doubt on Stathopoulos's credibility by showing prior inconsistent statements.

[5] These defendants contend that certain cases require, or tend to require, the production of directly exculpatory material and evidence in the possession of the prosecution. See e.g. *Giles* v. *Maryland,* 386 U. S. 66, 74–78, 82–84, 97 (see also dissent beginning at 102); *Barbee* v. *Warden, Md. Penitentiary,* 331 F. 2d 842, 844–847 (4th Cir.); *Smith* v. *Florida,* 410 F. 2d 1349, 1350–1351 (5th Cir.); *United States* v. *Miller,* 411 F. 2d 825, 830–833 (2d Cir.). See also *Mesarosh* v. *United States,* 352 U. S. 1, 10–14; *Brady* v. *Maryland,* 373 U. S. 83, 87–88. It is not clear how these decisions (and others) deal with allegedly exculpatory, hearsay evidence principally useful for impeachment, where there has been shown no explicit defence request for such information and no prosecution frustration of defence efforts to obtain substantially relevant information. See *Link* v. *United States,* 352 F. 2d 207, 210–213 (8th Cir.); *United States* v. *Keogh,* 391 F. 2d 138, 146–149 (2d Cir.); *Rhinehart* v. *Rhay,* 440 F. 2d 718, 726–727 (9th Cir.). See also *United States* v. *DeLeo,* 422 F. 2d 487, 498–499 (1st Cir.). Suppression of significant and material evidence favorable to a criminal defendant, where a defence request reasonably directs the prosecution's attention to it (see the *Keogh* case, 391 F. 2d 138, 147 [2d Cir.]), obviously is improper. Much, however, depends on the particular circumstances and the nature, importance, and relevance of the allegedly suppressed evidence.

suppression to require, as matter of law, at this time a new trial or even an evidential hearing on matters raised by their motions. Cf. the *Keogh* case, 391 F. 2d 138, 149 (2d Cir.). Cf. also *Townsend* v. *Sain,* 372 U. S. 293, 312–322. The judge has afforded them full opportunity to supplement the affidavits. This opportunity, especially in a capital case, obviously should remain open, as should the opportunity of these defendants to bring to the judge's attention any unreasonable frustration of their efforts to obtain access to witnesses whose testimony might constitute material, substantial evidence of a type which would require a new trial. We think the judge was warranted, in the circumstances, on this record, and at this stage of the proceedings (where Federal appellate review of the original convictions has not yet been completed) in ruling as he did, in effect without prejudice to later defence motions on a more complete record.

> *Orders allowing the Commonwealth's motion to dismiss and denying these defendants' motions for new trial affirmed.*