Lewis GRIECO et al.,
Petitioners-Appellants,

v.

Larry MEACHUM, Warden, et al.,
Respondents-Appellees.

No. 75–1336.

United States Court of Appeals,
First Circuit.

Argued Jan. 7, 1976.

Decided April 7, 1976.

David Berman, Medford, Mass., for appellants.

Robert V. Greco, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., and John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

These are six appeals from dismissals of habeas corpus petitions challenging the constitutionality of petitioners' convictions in the Massachusetts courts for crimes related to the 1965 murder of one Edward Deegan. The convictions were affirmed on appeal by the Massachusetts Supreme Judicial Court, *Commonwealth v. French,* 357 Mass. 356, 259 N.E.2d 195 (1970), and subsequent denials of motions for a new trial were also affirmed. *Commonwealth v. Cassesso,* 360 Mass. 570, 276 N.E.2d 698 (1971). The government's star witness at trial was Joseph Baron-Barboza who testified, in substance, that petitioners Tamaleo and Limone approached him to kill Edward Deegan in 1965, and that he enlisted the aid of petitioners Grieco, French, Cassesso, and Salvati, among others, to carry out this task. A further statement of the facts can be found in the reported opinions of the Massachusetts state courts. *French, supra; Cassesso, supra.*

The joint prosecution of the six defendants, now petitioners, for capital offenses occupied 50 days and resulted in 469 assignments of error. *French, supra,* 357 Mass. at 362 n. 2, 259 N.E.2d 195. After exhausting their state remedies, petitioners brought this habeas corpus action in federal district court presenting 90 items of claimed constitutional error in their trial. The district court found 88 of the asserted errors lacked evidentiary support in the record, were not shown to have resulted in prejudice to the petitioners, or were not of constitutional proportions. As to the remaining two assignments, the district court found that *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), did not compel a finding of constitutional error in

the admission of the testimony of one Glavin against petitioner Cassesso. Second, the district court found, after an evidentiary hearing, that the practice of the prosecuting attorney at trial in submitting trial memoranda to the judge without providing copies to defense counsel did not violate due process in that the petitioner's counsel had acquiesced at trial, and in any event there was no showing of prejudice.

■ On appeal, substantially all of the 90 claims of error have been briefed and are presented for our consideration. Our review of a state court conviction is limited to searching for constitutional error. 28 U.S.C. § 2254(a). Therefore, we shall particularize only those issues which arguably rise to that threshold. The 90 claims can be divided into the following categories: (1) failure of the trial court to sever the trials of the six defendants, (2) denial of pre-trial discovery, (3) objections to the selection and impartiality of the jury, (4) evidentiary rulings, (5) instructions to the jury, (6) misconduct by the trial court and prosecuting attorney, and (7) various allegations concerning the denial of directed verdicts and denial of motions for a new trial. Like the district court, we find that most of the issues presented do not rise to constitutional proportions. Consequently, we will discuss in detail only selected issues under categories (1), (4), and (6).

I. Failure of the Trial Court to Sever

Petitioner Limone contends that the trial court's refusal to sever the trials of the defendants created constitutional error under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). He bases his claim upon the admission of testimony of Joseph Baron relating conversations between Baron and petitioners Tamaleo and Cassesso which tended to link Limone to the decision to kill Deegan.

A short discussion of the underpinnings of *Bruton* discloses the inappropriateness of this claim. *Bruton* is concerned with the prejudice inherent in the introduction of a confession made by one co-defendant which implicates another, non-confessing co-defendant. In the absence of an established exception to the hearsay rule, the confession could not be offered against the non-confessor. But in a joint trial of the two co-defendants, the same jury which decides the non-confessor's case has heard the confession, though it was not offered against him. The Court, in *Bruton,* held that limiting instructions, the normal means to insure that such inadmissible evidence is not considered by a jury, were insufficient to cure the extreme prejudice created by the co-defendant's confession. Therefore, the proper remedy would be to sever the trials of the defendants.

■ In this case, the statements at issue were, at most, admissions made by various of the petitioners in the course of a conspiracy or joint criminal enterprise. In both Massachusetts, *French, supra,* 357 Mass. at 380, 259 N.E.2d 195, and in the federal courts, *United States v. Clayton,* 450 F.2d 16 (1st Cir. 1971), statements by co-conspirators made during the pendency and in furtherance of a criminal conspiracy are admissible against all conspirators as an exception to the hearsay rule. If, as the petitioner requests, the trials had been severed, the very same statements could have been offered against him at his separate trial, given a proper showing of conspiracy. The petitioner, accordingly, has not suffered prejudice because he was tried together with the other defendants. *Bruton* is inapplicable.

■ Petitioner's arguments resolve into a basic confrontation clause challenge to the co-conspirator exception to the hearsay rule. There is no merit in that claim. *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). In a practical sense, moreover, the questioned testimony was of minimal importance when viewed against the remainder of Baron's testimony which overwhelmingly implicated Limone. Even if there were constitutional error in admitting this testimony, it appears to us as harmless error beyond any doubt. The other grounds asserted to support error in refusal to sever the trials—such as antagonis-

tic defenses and conflicting trial strategies—have not been developed with any particularity, and have not been shown to have resulted in prejudice.

## II. Evidentiary Rulings

Of some dozen challenges to evidentiary rulings, the only one worthy of discussion is the admission of certain testimony by one Glavin against petitioner Cassesso. Glavin, a prisoner serving a life sentence for an unrelated murder, had been approached by a fellow inmate at MCI, Norfolk, named Ventola. Cassesso was also incarcerated at the institution pending trial for complicity in Deegan's murder. Ventola offered Glavin $50,000 to confess to the murder of Deegan for which Cassesso had been indicted. Glavin would be schooled in the details of Deegan's murder, and the money would be paid to a trustworthy attorney to be held for Glavin's family. Glavin, after this approach by Ventola,[1] reported the proposition to Agent Hanlon of the Worcester, Massachusetts, FBI office, a personal acquaintance. Hanlon told Glavin to speak with Cassesso as if he were going along with the plan. Cassesso, in the course of some three conversations, allegedly confirmed Ventola's offer, and with two others, added the requirement that Glavin kill a named person so that they would have "something on him".

Glavin testified to Cassesso's conversations with him at trial. These otherwise hearsay statements were presumably admitted as admissions of a defendant by conduct tending to show consciousness of guilt of past crimes. Cassesso challenges the testimony as elicited by the government while an indictment was pending in the absence of counsel, and claims that its admission was in violation of *Massiah v. United States, supra.*

The district court found that the factual situation in the present case and in *Massiah* had certain parallels; both involved post indictment incriminatory statements, made without the advice of counsel, admitted into evidence. It found, however, several distinctions. The first difference involves the position of the government agents in the two cases. Agent Hanlon, who instructed Glavin to pursue the matter with Cassesso, was employed by the federal government, and had no prior connection with the state prosecution of Cassesso for complicity in the murder of Deegan. We do not, however, find it dispositive that Hanlon worked for a separate branch of the government. But if the circumstances of this case were that neither Hanlon nor Glavin knew of the indictment pending against Cassesso, and inadvertently had been made aware of these incriminatory statements while pursuing other inquiries, we would be inclined to find that *Massiah* was not violated. *United States v. Garcia,* 377 F.2d 321 (2d Cir. 1967).

There is, however, a more substantial distinction between the statements in the case at bar, and those in *Massiah.* Massiah, after he was indicted and released on bail, made "several incriminating statements", 377 U.S. 202, 84 S.Ct. 1200–01, 12 L.Ed.2d 248, during a conversation with Colson, a co-defendant. Unbeknown to Massiah, Colson had previously decided to cooperate with the authorities, and by pre-arrangement, the conversation was overheard, by means of a bugging device, by an FBI agent who testified to Massiah's admissions at trial. Cassesso's statements, on the other hand, were primarily uttered in the commission of another substantive offense, subornation of perjury, and were only incidentally admissible in his trial on the pending indictment.[2] Because of this distinction

---

1. The district court states in its opinion that Glavin had spoken with Cassesso before approaching the FBI with the story. The petitioner contends that Glavin spoke with Cassesso only after his contact with the FBI. Under the resolution of the issues *infra,* this difference is not crucial. If Glavin had spoken with Cassesso before approaching the government, his tes-

timony of the early conversations would raise no *Massiah* issues. *See Paroutian v. United States,* 370 F.2d 631 (2d Cir. 1967); *United States ex rel. Baldwin v. Yeager,* 428 F.2d 182 (3d Cir. 1970).

2. *Massiah* also speaks of statements "deliberately elicited" by government agents. 377 U.S. at 202, 84 S.Ct. at 1200–01, 12 L.Ed.2d at 248.

we find that Cassesso's Sixth Amendment right to counsel was not violated by Glavin's conversations with him, nor by the introduction into testimony in his trial for the murder of Deegan.

 The Supreme Court has established that the pendency of an indictment does not immunize a defendant from accountability for statements made in the commission of another crime, even though made to a government agent, in the absence of counsel. *See United States v. Hoffa,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *accord, United States v. Missler,* 414 F.2d 1293 (4th Cir. 1969). And the use of a government informer, or otherwise legal eavesdropping, to obtain this evidence of another crime does not violate the Sixth Amendment right to counsel as long as the privacy between the accused and his counsel is not compromised. *See United States v. Hoffa, supra* at 304–09, 87 S.Ct. at 383–86, 17 L.Ed.2d at 414–17. It is clear, therefore, that the government's good faith acquisition of information concerning the attempted subornation of perjury through the use of Glavin as an informer did not violate Cassesso's right to counsel.

There still remains the novel question of whether the admission of Glavin's testimony at Cassesso's trial for complicity in the Deegan murder independently violated any of Cassesso's constitutional rights. In both *Hoffa* and *Missler, supra,* the contested testimony was introduced in the trial for the second substantive offense, and not in the trial of the charges in the indictment pending at the time of the conversations. Both cases suggest that the introduction of such testimony at the trial of the pending indict-

ment would present serious Sixth Amendment questions.[3] We conclude, however, on the facts of this case, that the admission of Glavin's testimony was constitutionally permissible.

 Exclusion of relevant, otherwise admissible testimony, is a remedy for past violations of the constitution. As there was no violation of Cassesso's constitutional rights in obtaining the information contained in Glavin's testimony, we can see no constitutionally required reason to exclude it from the trial in question. Had the government's intention been to obtain testimony against Cassesso for use at the trial for Deegan's murder, or had the statements of Cassesso been innocuous except for their implication of consciousness of guilt of the prior crime, our decision might be different. The government, however, acted in good faith in investigating another crime. The fact that the new criminal activity also had a bearing on the consciousness of guilt of past crimes should not disable the government from taking protective measures. The defendant, moreover, was under no misapprehension that the statements he made could not be used against him at least in a trial for subornation. True, had Cassesso been informed that Glavin was cooperating with the authorities, he would not have made the incriminating statements. Had his counsel been present, he would have been advised to refrain—not because the statements would have shown a consciousness of guilt of complicity in Deegan's murder, but because his statements, themselves, were the operative acts of a separate criminal offense.[4]

To the extent that Agent Hanlon was investigating a separate substantive offense, he was not attempting to deliberately elicit statements incriminatory in relation to the Deegan murder charge. "Deliberate elicitation", however, is not required for a violation of *Massiah* in this circuit. *Hancock v. White,* 378 F.2d 479, 482 (1st Cir. 1967).

3. In *Hoffa,* the Court intimated that had Hoffa been convicted on the pending Taft-Hartley Act charges, Partin's conduct may have required reversal of the conviction. This suggestion, however, was based upon the proposition that

Partin overheard defense strategy conversations between Hoffa and his attorneys.

4. It is noted, moreover, that had Cassesso made these proposals to his counsel, the attorney-client privilege probably would not have excluded his counsel's testimony to such conversations. The privilege generally does not extend to confidences concerning present and future criminal activity. *See Commonwealth v. Dyer,* 243 Mass. 472, 505–06, 138 N.E. 296 (1923); *see generally United States v. Friedman,* 445 F.2d 1076, 1085–86 (9th Cir. 1971).

▇ The remaining alleged errors in the admission, or exclusion, of evidence do not rise to constitutional dimensions. An example is what counsel has termed "what may well be the most grievous single evidentiary error committed by the trial judge". This lay in the court's refusal to allow Glavin, who had testified that Cassesso had told him that he would pay the $50,000 for admitting to Deegan's murder and would also arrange for Glavin's parole or commutation, to be asked whether he had made prior inconsistent statements. In fact, counsel had obtained grand jury minutes which revealed that Glavin had testified that Cassesso had said that "the office" would pay the money and attend to the parole. The court refused the use of the minutes, unless they had been authenticated in the usual course—an effort which was not made. Whether or not Massachusetts law requires that the prior inconsistent statement be so proven in cross-examination is beside the point. The point is that such error falls far below the constitutional level cognizable in habeas corpus proceedings.

### III. Misconduct of Court and Prosecutor

▇ The one issue as to which the district court held an evidentiary hearing arose from the practice at trial of the prosecuting attorney in furnishing the court, but not opposing counsel, with trial memoranda. Counsel for petitioners, the district court and we share the opinion that *ex parte* communications shadow the impartiality, or at least the appearance of impartiality, of any judicial proceeding. And we agree with petitioners that such conduct may, in some circumstances, constitute a deprivation of due process of law. *Cf. Haller v. Robbins,* 409 F.2d 857 (1st Cir. 1969). But the district court carefully reviewed the trial record, and found, after the evidentiary hearing, that defense counsel, with full knowledge, acquiesced in the practice, "either by prior explicit agreement or by

their conduct at the trial". As the matter was not presented to the trial court for correction, the failure to object to the practice constitutes a waiver, and may amount to a deliberate bypass of the state forum in presenting this claim. *See Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). *But see Humphrey v. Cady,* 405 U.S. 504, 516–17, 92 S.Ct. 1048, 1055–56, 31 L.Ed.2d 394, 406–07 (1972).

▇ In any event, the practice of submitting *ex parte* trial memoranda, although meriting censure, is not a per se violation of petitioners' due process rights. *Cf. Glynn v. Donnelly,* 485 F.2d 692 (1st Cir. 1973). The district court found that the petitioners were unable to point to specific prejudice suffered as a result of this practice. Petitioners contend that the offending memoranda contained statements of expected evidence that were not later supported by testimony. Some of these statements, they claim, may have been extremely prejudicial as a sample brief detailed a plan to kill the wife of one of the petitioners, and expounded the petitioners' connection with organized crime.[5] But the district court found that these statements were no worse than an opening statement which promised more than the government was subsequently able to produce. Finally, and most significantly, the memoranda were submitted to a judge presiding in a jury trial, and not to the trier of fact. *Compare McFadden v. United States,* 63 F.2d 111 (7th Cir. 1933). In the absence of any showing that the memoranda infected the fact-finder's determination of the issues at trial, we hold that the challenged practice did not violate the petitioner's rights to due process of law.

The remaining allegations against the judge and prosecutor concern some eight instances of claimed overreaching by the court, and an equal number of instances of misconduct by the prosecutor. Given the length, complexity, and intensity of the tri-

---

5. The trial briefs were not available in the district court. A search of the Massachusetts court records did not reveal them, and the prosecutor could only find one partial sample memorandum in his personal files. The prosecutor, however, testified that the sample corresponded to his memory of the trial briefs.

al, it is not surprising to find evidence of occasional lapses into ill temper. But we do not find any evidence of misconduct, singly or collectively, which was so egregious as to taint the essential fairness of the trial.

## IV. Remaining Issues

■ Petitioners attack the denials of a wide variety of pretrial discovery motions, alleging that they constituted a denial of due process of law. We have reviewed the challenges and find them insufficient to establish constitutional violations. A majority of the claimed errors are matters committed to the discretion of the trial court under Massachusetts law, e. g., requests to inspect scientific evidence, requests for witnesses' grand jury testimony,[6] requests to interview witnesses held in custody, and the request for names of prospective witnesses. Their denial does not constitute constitutional error. *E. g., Moore v. Illinois,* 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706, 713–14 (1972). Other requests were denied because they were not specific enough, like the motion for evidence illegally obtained, or because they were forwarded at an improper time. For example, the motion to disclose exculpatory evidence in advance of trial was denied because *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218–19 (1963) does not compel extensive pre-trial discovery of exculpatory evidence within the prosecution's control. *See United States v. DeLeo,* 422 F.2d 487, 498 (1st Cir. 1970). Much the same can be said for the refusal to compel disclosure of the inducements offered government witnesses. All witnesses were subjected to vigorous cross-examination, and the motion to compel disclosure was not repeated at the end of the cross-examination. Other issues in the pretrial discovery area do not merit comment.

■ Petitioners allege that they were tried by a constitutionally defective jury because outside influences infected the jurors' impartiality. First, the trial court accepted the guilty plea of Joseph Baron on the first day of jury selection. Petitioners argue that the timing of the guilty plea maximized the possibility of prejudice and presumptively influenced the jury against the remaining co-defendants. There were, however, good reasons to accept Baron's plea at that time,[7] and the trial judge took precautions to minimize the publicity of the plea. The circumstances of this case are not those in which there was inherently prejudicial publicity that so saturated the community that it can be presumed that the jurors were biased thereby, *see Sheppard v. Maxwell,* 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, 620–21 (1966), and there has been no showing of actual prejudice. The other outside influence claimed involves a government witness, who about six months previous to the trial, had lost a leg in an explosion from a bomb activated by the ignition of his automobile. At the time of the bombing numerous press stories attributed the act to the underworld. Noting that the publicity was six months old, the trial judge refused to poll the jury concerning their memory of the press accounts. This claim of improper influence on the jury is too insubstantial and too speculative to fairly raise a constitutional issue. Petitioners' attack on the jury selection process is not of constitutional dimensions; there is no showing that the jury did not represent a fair cross-section of the community, or that members of a specified group were systematically excluded from jury service.

■ The court's instructions were attacked in several particulars. We find no constitutional substance in any of the criticisms of the instructions. There was no

---

6. In 1974, the Massachusetts Supreme Judicial Court decided, as a matter of state law, that requests for witnesses' grand jury testimony should be allowed. *Commonwealth v. Stewart,* 1974 Mass.Adv.Sh. 519, 309 N.E.2d 470. This ruling is not retroactive. In the instant case, the trial judge reviewed the grand jury testimo-

ny in camera, and forwarded one inconsistency to the defense.

7. The most pressing reason put forward by the prosecution was the fear that Baron would demand to take part in the jury selection for the joint trial.

shifting of the burden of proof as to conspiracy, or as to alibi. Nor was there any premature or excessive pressure on unanimity when the court gave at the outset instructions similar, but not identical, to those in *Commonwealth v. Tuey,* 8 Cush. 1, 203, 62 Mass. 1 (1851). While the court, in our opinion ill-advisedly, did not give a "close scrutiny" instruction as to accomplice testimony, *see United States v. House,* 471 F.2d 886, 888 (1st Cir. 1973), we recognize that Massachusetts law does not require it. We cannot find constitutional error here. Other issues relating to instructions do not warrant comment.

■ As to the issue of sufficiency of the evidence, raised by the motions for directed verdicts, we are mindful of our standard of review in habeas corpus actions from state court convictions. The writ can be granted only if there is such a void of evidentiary support as to amount to a denial of due process. *Crow v. Eyman,* 459 F.2d 24, 25 (9th Cir. 1972). No such defect is present here. Finally, we see no error in the state court's denial, without prejudice to submit further affidavits, of the motion for a new trial. *See Commonwealth v. Cassesso, supra.* The three affidavits, even if their allegations should be taken as true, did not contain information so compelling that the court exceeded its discretion, and consequently denied the petitioners due process of law, in denying the motions. *Compare Pyle v. Kansas,* 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942).

*Affirmed.*