**UNITED STATES of America, Appellee,**

v.

**Gordon "Butch" EARLEY, Jr., Appellant.**

**No. 83–2599.**

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1984.

Decided Oct. 11, 1984.

As Modified on Denial of Rehearing and Rehearing En Banc Dec. 14, 1984.

Emil Trott, Jr., Des Moines, Iowa, for appellant.

Guy Cook, Asst. U.S. Atty., (argued) and Joe Beck, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before ARNOLD and JOHN R. GIBSON, Circuit Judges, and DUMBAULD,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

The issue before us is whether the district court may receive from the United

* The HONORABLE EDWARD DUMBAULD, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

States District Attorney a "trial brief," outlining expected testimony from the proposed witnesses, which neither the government nor the court makes available to defense counsel. Such a brief was delivered by the district attorney in Earley's trial for bank larceny aggravated by the killing of two persons in violation of 18 U.S.C. § 2113(a) and (e) (1982), and its propriety is raised for the first time in Earley's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (1982). We conclude that the practice is improper, but not reversible error, since Earley, because of the overwhelming evidence of his guilt, can make no showing of prejudice. We affirm.

The district attorney provided to the court a fifty-five-page trial brief containing an outline of the expected testimony of 120 prospective government witnesses. After the jury was empaneled and just before opening statements, the following exchange, as set forth in the district court's memorandum opinion, took place:

MR. ROEHRICK: Well, one other thing, Judge, and it is sort of nasty, but I am going to bring it up anyway. Are we entitled to a copy of the trial brief that the Government gave to you?

THE COURT: I don't think so. Let me tell you what the trial brief the Government gave me is. The trial brief given to me by the Government is the usual Government trial brief. It merely gives the name and the identity of each witness the Government expects to call and a summary of the evidence that the Government expects to prove.

I have always received it, as merely a means of advising me in advance, you know, what to look for by way of evidence and so that I know what to expect from witnesses.

I read it over, and I usually spot areas where I think there may be some evidentiary problems so I get alerted to it, so I don't get surprised all the time; just some of the time.

MR. ROEHRICK: Can we have a copy of that brief, Your Honor, so we don't get surprised?

THE COURT: What is your right to it?

MR. COMITO: We have no authority.

THE COURT: If they want to give it to you, fine, but if they object to it—

MR. BLINK: You have got it.

MR. WRIGHT: You have it all.

THE COURT: I doubt that there are any surprises in it. It is fine with me, if they want to give it to you, but if they don't want to give it to you, then you would have to convince me that somehow you are entitled to it.

I would be happy to get one from you, too, if you would like to prepare one and tell me what your witnesses are going to testify to, and I won't give that to them either.

MR. ROEHRICK: I just wanted to know what it was.

THE COURT: It is not a legal brief. My position is that on any legal brief, a copy has to go to the other side. I don't receive secret legal briefs, but I feel that it is perfectly appropriate for counsel on either side, for my benefit, to say, 'Here, Judge. Here is a list of each of our witnesses and a summary of what we think they are going to testify to,' so that I will be up on this.

I don't think the other side is entitled to it, except as the laws governing pretrial discovery permit it. I don't think the mere fact that they have given me that courtesy gives you the right to it.

MR. ROEHRICK: That's all I have.

THE COURT: Let me assure you, on any legal brief, I insist, of course, that there be a copy provided to the other side, even if it is just an oral cite of a case. If for any reason that is not done in the presence of counsel, I expect you to immediately cite that case to opposing counsel.

The brief itself reveals that the district court placed a check mark beside the name of each witness who testified. No other markings or emphasis by the district court

appears on its copy of the brief. Earley was convicted and sentenced to life imprisonment with the recommendation that he not be granted parole until he was "legally entitled to it" after serving thirty years. His conviction was affirmed on appeal. *United States v. Earley*, 657 F.2d 195 (8th Cir.1981).

Earley then filed this motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. The district court considered the propriety of the brief filed by the government[1] and ruled that such a summary of expected testimony was not an improper ex parte communication and could not have caused bias or prejudice or otherwise denied the defendant a fair and impartial jury trial. The district court reasoned that the communication had been made to the judge in the performance of his judicial duties and thus, even though received in camera, could not have been the basis for disqualification. The district court denied the section 2255 motion.

On this appeal Earley argues that it was erroneous, improper, prejudicial and a denial of due process for the district judge to receive the written communication from the government without requiring a copy to be served on his attorney. He further argues that the failure of his attorney to competently demand a copy of the trial brief, to take steps to have the trial judge recuse himself or to raise the issue in the direct appeal were denials of effective assistance of counsel. Finally, Earley argues that the district court erred in denying the section 2255 motion without an evidentiary hearing.

**I.**

As an initial matter, the government argues that our consideration of Earley's allegations of error is barred by the Supreme Court decision in *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Under *Frady*, a defendant would have to show "cause and actual prejudice" to obtain collateral relief from an error not objected to contemporaneously at trial. *Id.* at 167, 102 S.Ct. at 1594. Earley did, however, object at trial to the ex parte communication of the brief.[2] The exchange between court and counsel recounted above is sufficient: It meets the concern underlying the contemporaneous objection requirement of giving the district judge the opportunity to reconsider rulings and correct errors, *Edwards v. Hurtel*, 724 F.2d 689, 690 (8th Cir.1984) (per curiam), and the district judge clearly ruled upon the objection. *See United States v. Thirteen Thousand Dollars*, 733 F.2d 581 at 585 (8th Cir.1984).

The government further argues that Earley's failure to raise the ex parte brief in his direct appeal of his conviction bars our consideration of that issue on a section 2255 motion, implying that *Frady* requires a showing of cause and actual prejudice in that situation also. Although we recognized in *Holtan v. Parratt*, 683 F.2d 1163, 1167 (8th Cir.1982), *cert. denied*, 459 U.S. 1225, 103 S.Ct. 1231, 75 L.Ed.2d 466 (1983), that *Frady* might be so extended, we found it unnecessary to address the issue there,[3] and we find it equally unnecessary to do so here. First, *Frady* is argued only most

---

**1.** The district court found that three other grounds in Earley's motion—denial of due process of law and the right to a fair trial through use of a multi-count indictment; exclusion of evidence of a polygraph test given to a government witness, offered for impeachment; and insufficiency of the evidence because of perjured testimony—were all decided adversely to him on direct appeal and could not be relitigated. *United States v. Sanders*, 723 F.2d 34, 36 (8th Cir.1983) (per curiam); *United States v. Holtzen*, 718 F.2d 876, 878 (8th Cir.1983) (per curiam); *Anderson v. United States*, 619 F.2d 772, 773 (8th Cir.1980) (per curiam). This ruling is not challenged on appeal.

**2.** The government is correct in stating that Earley did not move for recusal at any time; but given our disposition of the case, we find it unnecessary to consider the disqualification issue.

**3.** A case where at first glance we may seem to have reached this issue and applied *Frady*, *United States v. Renfrew*, 679 F.2d 730 (8th Cir.1982) (per curiam), is easily distinguishable because the defendant there withdrew his appeal and signed a waiver.

generally in the briefs. In addition, a Seventh Circuit opinion applying *Frady* to bar consideration of an error raised at trial but not on appeal, *Norris v. United States*, 687 F.2d 899, 903 (7th Cir.1982),[4] acknowledged that incompetence of counsel might be a reason for allowing what it otherwise characterized as "blatant" piecemeal litigation; and ineffective assistance of counsel was raised by Earley here. Determination of that issue would require a remand to the district court for its findings and initial conclusions,[5] yet the same substantive issues would still be before us should the district court determine that ineffective assistance of counsel was adequate cause for failure to raise the ex parte brief on initial appeal. Accordingly, we believe judicial economy would best be served by considering this case on the merits. Our conclusion that Earley must show prejudice to obtain relief will require us to make the same analysis as if we had applied *Frady* actual prejudice. In view of the serious penalty imposed on this petitioner, we are more comfortable in disposing of the case on this basis than in determining whether *Frady* imposes waiver of review on a section 2255 motion through failure to raise on appeal an objection made at trial.

## II.

Earley's right of access to the memorandum of expected witness testimony supplied to the district judge is not, as argued by the government, strictly an issue of pretrial discovery. Earley did not seek the trial brief as an incident of discovery but only asserted his claim after, and based his claim on, the submission of such document to the district judge for use during

trial. His concern is limited to information in the brief. Rule 16(a)(2) of the Federal Rules of Criminal Procedure,[6] cited by the government, protects from discovery *internal* government documents prepared for use in investigation and prosecution of a case; it can hardly be contended that a document is "internal" when the government purposefully has delivered it to the court.

The government next urges that we adopt the district court position that a communication, even if ex parte, is not improper if it is not "extrajudicial" but is made to the judge in the context of his participation in the proceedings. The cases cited in support of this argument, however, do not settle the issue here. In *United States v. Phillips*, 664 F.2d 971 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982), the trial judge had received an ex parte communication from investigators concerning the defendants' threats to witnesses and plans to disrupt the trial. The court on appeal pointed out the two "indisputably *proper* purposes" of the communication—concerns with orderly trial and relevance to possible bond revocation. *Id.* at 1003 (emphasis added). Similarly, in *United States v. Johnson*, 658 F.2d 1176 (7th Cir.1981), the ex parte communication consisted of submission of documents in camera to enable the judge to rule on the defendant's discovery motion. These cases, decided as they were on their specific circumstances, shed no light on whether submission of the trial brief in this case was equally proper and necessary to the discharge of the court's duties, and

---

**4.** The government in its brief actually relies on *United States ex rel. Williams v. Franzen*, 687 F.2d 944 (7th Cir.1982), a case involving a motion pursuant to 28 U.S.C. § 2254 (1982) after a state conviction which merely cites *Norris* and then finds it inapplicable because the issue as to which waiver was alleged had been sufficiently addressed on appeal.

**5.** The *Frady* cause and actual prejudice issue was not raised below because the district court summarily dismissed Earley's section 2255 motion without calling for a response, as allowed

under 28 U.S.C. § 2255 and Rule 4(b) of the Rules Governing Proceedings in the United States District Courts under Section 2255 of Title 28, United States Code.

**6.** This subdivision states that, except as provided in previous subparts, Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case."

thus permissible. It is not sufficient to label the communication "not extrajudicial" simply because it related to a legal matter before the judge.

An ex parte communication between a trial court and government counsel "[i]n addition to raising questions of due process ... involve[s] a breach of legal and judicial ethics. Regardless of the propriety of the court's motives in such a case ... the practice should be discouraged since it undermines confidence in the impartiality of the court." 8B J. Moore, *Moore's Federal Practice* ¶ 43.03[2], at 43–23 (1983) (footnote omitted). Thus, it is not controlling that the trial brief was intended to help the district judge carry out his trial responsibilities and to give advance warning of possible issues as to admissibility of evidence. The benign purpose does not insure against other tendencies for which ex parte communications are disfavored.

The First Circuit in *Grieco v. Meachum,* 533 F.2d 713, 719 (1st Cir.), *cert. denied,* 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976), was faced with a trial brief apparently similar to the one here; and though it reached its holding based on waiver of the objection, it agreed that *"ex parte* communications shadow the impartiality, or at least the appearance of impartiality, of any judicial proceeding."* The court stated that such communications, while not per se unconstitutional, could in some circumstances constitute deprivations of due process, citing its own earlier decision in *Haller v. Robbins,* 409 F.2d 857 (1st Cir.1969).

In *Haller,* the court found a lack of due process in an ex parte communication by the prosecutor to the judge of information relating to a sentencing hearing because of the possible advantage gained by having the "first word." The presentation was from an advocate and could not be expected to be impartial; and to permit only a tardy rebuttal, the court held, would be a "substantial impairment of the right to the effective assistance of counsel to challenge the state's presentation." *Id.* at 860. *Cf. Photovest Corp. v. Fotomat Corp.,* 606 F.2d 704, 710 (7th Cir.1979) (court recog-

nized difficulty of curing misconceptions held throughout civil trial), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1278, 63 L.Ed.2d 601 (1980). There is concern not just with the danger that the trial judge may form an opinion as to the truth of the evidence before it may be answered and challenged, *Haller,* 409 F.2d at 859, but also with the "insidious" nature of a court-prosecutor relationship which would allow such ex parte disclosures. *Id.* at 860; *cf. Askew v. United States,* 680 F.2d 1206, 1209 (8th Cir. 1982) (concern with a party's " 'undeniable right ... to be assured that his position has been thoroughly considered'," quoting *In re Las Colinas, Inc.,* 426 F.2d 1005, 1008 (1st Cir.1970)).

The court in *Haller* further stated that the anticipated presentation of the information in the ex parte communication in open court did not make the premature disclosure a "pardonable informality." 409 F.2d at 860. Though courts have held that there is no deprivation of due process when the evidence disclosed to the judge in private is later put on the record and the defendant is accorded an opportunity for cross-examination, *United States v. Green,* 544 F.2d 138, 146 (3d Cir.1976), *cert. denied,* 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977), this position is not responsive to the considerations raised by the *Haller* court, as discussed above. Also, there is a danger that the district court will be in possession of a body of information that does not become a part of the record and is not known to the defendant and subject to cross-examination if, for example, a number of the witnesses whose "testimony" is outlined ex parte are not called at trial or the witnesses who are called vary from their expected testimony. *See International Business Machines Corp. v. Edelstein,* 526 F.2d 37 (2d Cir. 1975).

The First Circuit in *Grieco,* however, found it "most significant" that the evidence in the trial brief would not infect the factfinder's determination because the ex parte communication was made just to the presiding judge in a jury trial. 533 F.2d at 719. The government's admitted purpose,

in part, of giving advance warning of evidentiary problems shows the limited scope of this argument. A judge not only makes potentially important decisions on admissibility of evidence and the general conduct of the trial but also rules on motions for judgment of acquittal and for new trial. Advance knowledge of possible evidence could influence a judge's participation in questioning witnesses. Finally, the judge has extremely important sentencing responsibilities. This court has recognized that ex parte communications of facts may deny a defendant due process even when he pleads guilty. *Rinehart v. Brewer*, 561 F.2d 126, 132–33 (8th Cir.1977) (when preliminary ex parte inquiry had in part convinced the judge to impose life sentence, defendant was deprived of right to an impartial tribunal at subsequent arraignment because judge could not objectively ensure that guilty plea was made knowingly and understandingly).

We must also dismiss as irrelevant the government's argument that communication of the trial brief was not "ex parte" because Earley had notice of its submittal (and allegedly even a general knowledge of its contents); this fact does not obviate concerns with the time and manner in which evidence is put before the court. Similarly, the fact that Earley was offered the opportunity to submit his own trial brief does not justify a procedure which is of doubtful constitutionality because of a defendant's rights to be present during trial and to confront witnesses against him. *See Dowdell v. United States*, 221 U.S. 325, 330, 31 S.Ct. 590, 592, 55 L.Ed. 753 (1911) (sixth amendment concerned with preventing conviction of the accused upon depositions or ex parte affidavits). A defendant should ordinarily be present when evidence is produced outside the hearing of the jury for a preliminary determination of admissibility, 8B J. Moore, *supra*, at 43–22; *see Glouser v. United States*, 296 F.2d 853 (8th Cir.1961), *cert. denied*, 396 U.S. 825, 82 S.Ct. 840, 7 L.Ed.2d 789 (1962); *cf. Peterson v. United States*, 411 F.2d 1074 (8th Cir.1969), *cert. denied*, 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199 (1970). Even if,

as suggested in *Grieco*, the inclusion in the brief of testimony never introduced at trial is considered no worse than an overextended opening statement, 553 F.2d at 719, it becomes an "opening opening statement" presented outside the presence of the defendant and outside the formal, public, adversarial structure which has traditionally been a hallmark of the process accorded persons accused under our Constitution.

We conclude that, because of the potential for prejudice and violation of due process, submission of an ex parte trial brief is improper and that the district court should not have accepted such a communication from the prosecution. We recognize that criminal trials even more than civil trials present extremely complex evidentiary issues upon which rulings must be made: The district judge made clear both at the time of the objection and in the order denying the section 2255 motion that he was receiving the brief only to aid in such decisions. Still we believe, however, that early identification of evidentiary issues may be more appropriately made by pretrial conference under Rule 17.1 of the Federal Rules of Criminal Procedure. A district judge may also during the course of trial seek the assistance of counsel in identifying and considering difficult questions that require studied and deliberate treatments; the record here in fact reveals numerous conferences outside the presence of the jury in which the admissibility of evidence was considered carefully and at length. We are satisfied that such procedures are far preferable to the furnishing of ex parte trial briefs.

### III.

■ Still, Earley is entitled to no relief absent a showing of specific prejudice. Since we think it is clear on the record beyond a reasonable doubt that he can make no such showing, there is no abuse of discretion in the district court's failure to grant an evidentiary hearing on the section 2255 motion. *Brown v. United States*, 656 F.2d 361, 363 (8th Cir.), *cert. denied*, 454

U.S. 1059, 102 S.Ct. 611, 70 L.Ed.2d 598 (1981).

We look first to the contents of the brief. With respect to those witnesses called to trial, their testimony in open court before the jury closely tracks that outlined in the brief. The impact on the district judge is thus cumulative only, and we can see no prejudice in this respect.

Some forty-nine prospective witnesses whose testimony was outlined in the brief were not called at trial. Many were custodians of telephone or motel records placed before the jury by stipulation, and many were designated as witnesses alternatively and did not testify because their counterparts were called. As to the remainder, the discussion in the trial brief simply contains no facts that could have been harmful to Earley, with one exception.

The brief outlined in detail the expected testimony of James Kenneth Wilson, who was in Polk County jail with Earley. Wilson purportedly was to recount conversations with Earley in which Earley said that an individual named Bennett had been involved in the crime with him, discussed the possibility of laundering some money and asked Wilson to take the murder weapon, to which Earley's wife, Rhonda, had access, and plant it on Bennett's property in Indiana. We examine the possible prejudice from this passage in three contexts: the conduct of the trial, the determination of guilt and the sentencing.

Earley argues that, in the first respect, he has made a prima facie showing of prejudice sufficient to require a hearing. The district judge, however, in his order denying the section 2255 motion discussed and rejected the claim that he had been biased by the information submitted by the government. A thorough examination of the record convinces us that the conduct of the trial and the rulings of the district court indeed do not reflect any such bias, and Earley in his brief has not pointed to any example of such. Numerous objections were made to the testimony, and the district court spent much time making a record with counsel out of the presence of the jury. This record demonstrates that the district court approached questions of admission of evidence and supervision of the conduct of the jury with fairness and deliberateness and with no sign of animus toward Earley, providing the cold, impartial consideration he properly claims is required.

Since we conclude that the conduct of the trial was in no way contaminated, and because the jury, unaware of the brief and its outline of Wilson's testimony, cannot have been prejudiced in its deliberation, Earley similarly is entitled to no relief with respect to the jury's determination of guilt.

Finally, we see no sign in the record that the passage in the brief pertaining to Wilson had a significant impact on the district court in imposing sentence on Earley. Because of the strong evidence of guilt, such a conclusion is untenable.

Earley took the stand and freely admitted participation in the entry to the bank, the taking of the money and the division of the spoils with Dawn Kriegel and Merle Bennett. His story was that Dawn Kriegel, because she doubted the future of her marriage, told Earley that she had the keys to the bank and the alarm system and knew the combination to the vault and suggested the burglary. Earley then recruited the enthusiastic Bennett as a participant. Earley stated that on the night in question he and Dawn went to the bank, filled a plastic trash bag with money and took it across the street to the office of the Avco Finance Company, to which Earley had access. Later, Dawn drove up, took the money and asked Earley and Bennett, who was by then present, to follow her to Des Moines, where she gave them their share. In the final analysis, Earley admitted that his only disagreement with the testimony of Merle Bennett and others was his denial that he had killed Dawn Kriegel and her husband, Dan.

Merle Bennett testified that, in response to a phone call from Earley, he joined Earley in the Avco office. When he arrived, he could hear Dawn in the basement of the building saying that she wanted to go

home. Earley had told Bennett that Dawn would have to be killed, and Bennett testified that, after Earley went into the basement, he heard shots being fired and moans coming from Dawn. Bennett further testified that he helped Earley remove Dawn's body from the Avco basement, where she had been tied between two posts, and place it in the trunk of a car Earley was driving. Bennett had previously testified that Earley had said that he had found it necessary to kill Dan Kriegel shortly before coming to the bank.

In addition, other evidence tied Earley to the murders. Bennett testified that he had loaned Earley a .32-caliber revolver, which Earley had never returned; and bullets taken from the bodies of Dan and Dawn Kriegel and from the sites of the two killings all matched earlier bullets retrieved from the Bennett farm and known to have been fired from that .32 revolver. A pair of gloves found in the search of Earley's residence proved to have traces of chemicals that could have been left by the firing of a weapon, although Earley's father claimed ownership of the gloves and there was expert testimony that some agricultural and garden products contain similar chemicals and might have left such residue. Bennett's wife and a female relative testified that Earley had asked them to stage a phone call to Dawn to try to draw her away from a group so that he could meet her alone. Bennett's wife also testified that Bennett had told her of Earley's murder of the Kriegels and that she and her husband as a result feared for their own safety. Finally, blood traces of both type O and type AB, the blood types of Dan and Dawn Kriegel respectively, were found on a mat taken from the trunk of a car used by Earley.

Following the jury verdict of guilty, the district court in pronouncing sentence stated that Earley should be imprisoned for life with the recommendation that, because of the nature of the crime, he not be granted parole until "legally entitled to it" after serving thirty years. We cannot conclude that a bland outline of Wilson's purported testimony, little more than one page (out of fifty-five) in length, in the brief given to the district judge could have affected this sentence in light of the overwhelming and vivid evidence of guilt presented in live witness testimony during a trial lasting some thirteen days. The record contains, as the district court order recites, strong evidence that the defendant "brutally murdered two persons in cold blood, execution style."

Our conclusion as to lack of prejudice compels us also to reject Earley's assertion of ineffective assistance of counsel in the failure to contest more vigorously the ex parte communication of the trial brief or to seek recusal to guard against possible resulting bias. Clearly, the second element of this claim, prejudice from the omissions of counsel, cannot be shown. *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Finally, we need not consider Earley's alternative arguments that the ex parte brief was improper under Rule 49(a) of the Federal Rules of Criminal Procedure or 28 U.S.C. § 455 (1982); because of the lack of prejudice any error would be harmless, assuming these contentions, short of some constitutional dimension, were even cognizable on a section 2255 motion. *See United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979); *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

We affirm the district court's dismissal of Earley's section 2255 motion.