UNITED STATES of America, Appellee,

v.

**Roy CALHOUN, Appellant.**

UNITED STATES of America, Appellee,

v.

**Joseph MINOGLIO, Appellant.**

Nos. 80–5108, 80–5109.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 10, 1981.

Decided Jan. 28, 1982.

Certiorari Denied April 26, 1982.
See 102 S.Ct. 2014.

---

Gerald A. Kroop, Baltimore, Md. (Neil W. Steinhorn, Gerald A. Kroop, P. A., Baltimore, Md., on brief), for appellants.

David D. Queen, Asst. U. S. Atty., Baltimore, Md. (J. Frederick Motz, U. S. Atty., Catherine C. Blake, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, PHILLIPS, and MURNAGHAN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Appellants Calhoun and Minoglio challenge their jury convictions for conspiracy and racketeering activities in violation of the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. §§ 1961, 1962(d), 1963 (1970). Three issues were raised on appeal: (1) insufficiency of the evidence to establish an "effect on interstate commerce"; (2) insufficiency of the evidence of Minoglio's guilt; and (3) suppressibility of taped conversations with Baltimore police officers under the *Massiah* doctrine. We find these contentions to be without merit and therefore affirm the convictions.

As counsel for appellants conceded at oral argument, the first issue was recently decided adversely to appellants' position by this court in *United States v. Griffin*, 660 F.2d 996 at pp. 998–999 and n.3 (4th Cir. 1981). We also do not tarry over the second issue, since the trial testimony of various police officers and tape transcriptions of meetings with one Sidney Allen, an associate of Calhoun and Minoglio, fully support the jury's verdict of Minoglio's guilt.

Discussion of the *Massiah* issue requires review of the factual background. As a result of a May 1978 raid by Baltimore police on one of Calhoun's bookmaking establishments, Calhoun was arrested and tried for violations of Maryland gambling laws (bookmaking, possession of flash paper, maintaining a house for a common nuisance). During Calhoun's appearances at the Baltimore City Courthouse in connection with those state charges on November 15, 1978, February 8, 1979, and March 1, 1979, Calhoun talked with two city vice squad officers, Klein and Kinkead, who had participated in the May 1978 raid. Both officers wore concealed electronic recording devices. The officers also surreptitiously recorded conversations with Calhoun and Minoglio, respectively, at a Baltimore restaurant on December 6, 1978, and August 31, 1979.

The tape recorders had been placed on the officers in connection with a large-scale coordinated federal-state investigation of the Calhoun-Minoglio bookmaking operations. That investigation began soon after the officers were contacted on August 23, 1978, by Allen, who offered them monthly payments in exchange for protection of certain telephone numbers to be supplied them from time to time by Allen. Receiving a report of the attempted bribe, the officers' superiors decided to install the tape recorders and to allow the FBI to monitor the tapes. Payoffs were regularly made by Allen from September 1978 to December 1979, when Calhoun and Minoglio (and others) were federally indicted and arrested for facilitating their illegal gambling operations through corruption, bribery, and attempted bribery of Baltimore City police officers.

The federal racketeering offense was bribery; the challenged tapes were made during the "investigatory" phase of the RICO case. Although appellants seek to argue to the contrary, the "accusatory" phase of the state gambling case against Calhoun was not inextricably intertwined with the undercover federal bribery investigation, even though it partially overlaps the state case in time span. The conversations were not being recorded in order to gather information about the May 1978 raid which underlay the state charges against Calhoun, nor were the tapes even alluded to at the

state trial because the federal investigation was still under way. All of the conversations with Allen, Calhoun and Minoglio were made before the federal arrest of Calhoun and Minoglio on December 18, 1979.

We read *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and its progeny to say that constitutional rights are violated where the government covertly gathers admissions of some past wrongdoing of which a suspect already stands accused, while different or subsequent criminal acts may be secretly investigated even though the target is under suspicion of another earlier crime. In *Massiah* itself the suppressed post-arrest conversations, which occurred while the suspect was free on bail after indictment, related to the very facts of the crime for which Massiah had been arrested and charged. This logical linkage between the statements and the pending prosecution was emphasized several times even by the dissenters in *Massiah*, who repudiated a suppression rule for "relevant, reliable and highly probative" evidence "of the issue which the trial court has before it—whether the accused committed the act with which he is charged." *Id.* at 208, 84 S.Ct. at 1204; *see also id.* at 212, 84 S.Ct. at 1206. Here the state's indictment involved gambling violations; the state prosecutor never sought to introduce the tapes at Calhoun's trial for the purpose of proving those charges.

The Court soon after *Massiah* distinguished its new doctrine from surviving rules of non-suppression, in a case in which a person accused of one offense makes "incriminating statements ... totally unrelated in both time and subject matter to ... [the first] trial." *Hoffa v. United States*, 385 U.S. 293, 309, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966). *Hoffa* denied suppression in a second trial of Hoffa for the different offense of attempting to bribe jurors in his first trial.

The distinct and separate offense theory in *Hoffa* has been used to confine *Massiah*. This court has previously recognized that "incriminating statements made by indicted defendants out of the presence of counsel may not be admitted at trial *to prove the charge in the indictment.*" *United States v.*

*Missler*, 414 F.2d 1293, 1302 (4th Cir. 1969) (emphasis added). But we also held in *Missler* that a defendant indicted for one offense is not immunized from accountability for statements uttered subsequently tending to prove another crime. *Id.* at 1303.

We and at least one other Court of Appeals have thus held that involvement in the solicitation of bribes, the offense at the foundation of the present case, can constitute a distinct criminal act under appropriate circumstances for purposes of applying the *Massiah* doctrine. *United States v. Merritts*, 527 F.2d 713 (7th Cir. 1975). We therefore conclude that the taped conversations between Calhoun and the police were properly admitted at his federal racketeering trial.

AFFIRMED.