**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Amos LISENBY, Defendant-Appellant.**

**No. 80–5903.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 11, 1983.

James P. Judkins, Tallahassee, Fla., for Capo.

E.C. Deeno Kitchen, Tallahassee, Fla., for A. Lisenby.

Leo A. Thomas, Charles J. Kahn, Jr., Pensacola, Fla., for C. Lisenby.

J. LaDon Dewrell, F. Lloyd Blue, Jr., Fort Walton Beach, for T. Williams.

John R. Weed, Conrad C. Bishop, Jr., Perry, Fla., for Booker.

David L. McGee, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, and RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

We granted rehearing en banc to reconsider whether the district court's refusal to suppress recorded conversations of Amos Lisenby made by a confidential informant after Lisenby had been arrested requires reversal under *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The panel affirmed the district court, *United States v. Capo,* 693 F.2d 1330, 1338 (11th Cir.1982), with Chief Judge Godbold dissenting, 693 F.2d at 1340. After en banc consideration, we find that during the trial of Amos Lisenby for conspiracy to possess and possession with intent to distribute the admission of Lisenby's surreptiously recorded statements made after his arrest did not contravene *Massiah.* As to all other issues and defendants, the panel opinion is reinstated.

## FACTUAL BACKGROUND

Government agents infiltrated a marijuana smuggling operation in the Panama City, Florida area. On July 16, 1980, Officer Russ, an investigator of the Florida Marine Patrol, inspected marijuana at the Marifarms Warehouse, located on "Bouration Bayou off of Highway 79 in the West Bay area." (Tr. at 1088). Officer Russ had not observed the marijuana being placed in the warehouse nor had he seen Amos Lisenby during his inspection. Russ set up a surveillance "in the vicinity" and saw Amos Lisenby at 1:00 a.m. on July 17, 1980 on "the old 98 which is the beach road, used to be called the back beach road. It's now 38." (Tr. at 1092).[1] The only testimony before

---

1. The distance between the warehouse where the marijuana was stored and the location where Officer Russ saw Amos Lisenby leave the truck was the subject of some controversy during the en banc oral argument. The locations stated by Russ during trial are not precise enough to enable determination of this distance, even by reference to a Map of Bay Coun-

the jury concerning Officer Russ' sighting of Amos Lisenby was that Lisenby "appeared to be sweaty." (Tr. at 1092).

During arguments to the court, counsel agreed that Officer Russ had watched Lisenby leave a truck in a vacant lot. There is no question he was suspicious of Amos Lisenby and thought he might be connected with the marijuana in the warehouse. Russ smelled marijuana and observed marijuana on the truck's bumper, then opened the back of the truck and observed more residue. (Tr. at 89). On July 18, 1980, the next day, Amos Lisenby was arrested upon turning in this U-Haul truck and charged with a violation of 21 U.S.C. § 844, a misdemeanor possession of marijuana. (Tr. at 156). Lisenby exercised his rights and obtained a lawyer. The lawyer notified the government of representation on July 23, 1980.

A week later, on July 30, Amos Lisenby met with his brother Cody Lisenby and Vern Oblisk, who had become a government informant. Oblisk was attempting to contact Daryl Holman through Cody Lisenby, in order to obtain money which Holman owed Oblisk. During the meeting with the Lisenby brothers, Oblisk wore a body bug and recorded the conversation. Both Lisenbys made statements concerning their involvement in the landing and transportation of the marijuana in the warehouse.

Amos Lisenby, as well as his brother Cody, and six other persons were indicted for conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The misdemeanor possession charge against Amos Lisenby was dropped.

Amos Lisenby moved to suppress the recorded statements obtained by Vern Oblisk. Government counsel expressed the desire to introduce both the statements of Amos Lisenby and the marijuana residue found in the rental truck. The trial court suppressed the residue found in the truck, but "in view of the fact that this was an ongoing crimi-

nal conspiracy" declined to suppress the tapes. (Tr. at 177).

Amos Lisenby appealed his conviction on both counts, contending that the tapes should have been suppressed under *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). A panel of this court found the tapes admissible, *United States v. Capo,* 693 F.2d 1330, 1338 (11th Cir.1982), Chief Judge Godbold dissenting, 693 F.2d at 1340. We granted a rehearing en banc to allow the full court to consider whether the admission of Amos Lisenby's statements violated the tenets of *Massiah.*

## LEGAL PRECEDENT

All parties agree that any analysis of the problem of statements made after an arrest should commence with the landmark case of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Both the government and Amos Lisenby rely on similarities with or distinctions from *Massiah.*

Massiah was a merchant seaman indicted with a man named Colson for possession of cocaine aboard a United States vessel, conspiracy to possess and to import. Massiah pleaded not guilty. Colson, however, decided to cooperate with the government's investigation. With Colson's permission, a radio transmitter was installed under the front seat of his car. Massiah and Colson thereafter held a lengthy conversation while sitting in the car. A government agent listened to the conversation including several incriminating statements made by Massiah. During his trial testimony, the agent related Massiah's incriminating statements. Massiah was convicted of several narcotics offenses. Reversing the conviction, the United States Supreme Court held that Massiah was denied the basic protections of the Sixth Amendment "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the

ty, Florida published by the Bay County Chamber of Commerce. It does appear, however, that Russ's statement "in the vicinity" should be liberally construed to include the possibility

that Amos Lisenby was several miles from the warehouse and to exclude the inference that Lisenby's truck was in the warehouse parking area.

absence of counsel." 377 U.S. at 206, 84 S.Ct. at 1203.

The other seminal United States Supreme Court decision which must be considered is *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). James Hoffa was originally charged with violating the Taft-Hartley Act and was on trial in Nashville, Tennessee. During the period of this trial, which is known as the Test Fleet trial, Hoffa was frequently in the company of two other Teamster officials, King and Partin. Partin, however, was making reports to a government agent concerning endeavors to bribe the jury. The Test Fleet trial ended with a hung jury. Hoffa was subsequently convicted for endeavoring to corrupt two jurors, he appealed and the United States Supreme Court granted certiorari.

After rejecting Hoffa's claims under the Fourth and Fifth Amendments, the Court considered whether Hoffa's Sixth Amendment right to counsel was violated. Hoffa argued that because government informant Partin was often present in the hotel suite with Hoffa and his attorneys, the confidential attorney-client relationship was impermissibly intruded upon by the government. Yet the Court reasoned that even if such were the case, it would be relevant only if the Test Fleet trial had concluded with a conviction rather than a hung jury. To set aside Hoffa's conviction for jury tampering would be "both unprecedented and irrational." 385 U.S. at 307, 87 S.Ct. at 416. The Court noted that Hoffa's statements during the Test Fleet trial "related to the commission of a quite separate offense—attempted bribery of jurors," *id.* at 308, 87 S.Ct. at 416–417, and rejected Hoffa's Sixth Amendment claims. Thus it appears that *Hoffa* carves out a "separate offense" exception from *Massiah*.

### OTHER CIRCUITS

The conjunction between *Massiah* and *Hoffa* has been explored by other circuits. In *United States v. Missler*, 414 F.2d 1293 (4th Cir.1969), a defendant indicted on a highjacking charge made a contract with a trigger man to kill a co-defendant expected to testify for the government. The trigger man informed police and a meeting was arranged at which the police listened to the contract being confirmed. The defendant was indicted and convicted for obstruction of justice. The Court concluded that *Massiah* was not applicable and held

> The pendency of an indictment for one offense does not immunize a defendant from accountability for statements made after indictment in the commission of another crime, nor does it shield him from testimony concerning them.

*Id.* at 1303. The court further noted that even if the right to counsel had been infringed it would be infringed only as to the then pending highjacking prosecution and there would be no entitlement "to suppression of evidence bearing upon an entirely new, subsequent offense." *Id.* The Fourth Circuit recently adhered to *Missler* in *United States v. Calhoun*, 669 F.2d 923 (4th Cir.1982).

The First Circuit has followed the logic of *Missler*. In *Grieco v. Meachum*, 533 F.2d 713 (1st Cir.1976), the court considered the habeas corpus petitions of six men challenging their Massachusetts state court convictions for crimes relating to a 1965 murder. Casseno was incarcerated pending trial for murder. A fellow inmate approached Glavin, also an inmate and under life sentence, and offered to pay Glavin to confess to the murder for which Casseno was charged. Glavin reported the offer to government agents and cooperated with them. They told him to pretend to go along with the plan and talk with Casseno himself. Glavin did so, and talked with Casseno three times. At the trial of Casseno on the murder charge, Glavin testified to statements made to him by Casseno in these conversations, confirming the intermediary's offer. Presumably the testimony was admitted as admissions of a defendant by conduct tending to show consciousness of past crimes. The First Circuit held that *Massiah* was not applicable because Casseno's statements were "primarily uttered in the commission of another substantive offense, subornation

of perjury, and were only incidentally admissible in his trial on the pending indictment." *Id.* at 717.

Within a month of our panel decision in *Capo* denying Amos Lisenby's *Massiah* claim, the Seventh Circuit confronted a *Massiah* issue in *United States v. Moschiano,* 695 F.2d 236 (7th Cir.1982). Moschiano was arrested on September 11, 1980 for selling one pound of heroin to government agents. During his trial, Moschiano raised the defense of entrapment. To rebut this defense, the government offered evidence concerning two previous drug transactions as well as the testimony of government agent Kazmar concerning a subsequent transaction. Agent Kazmar testified that on December 5, 1980, approximately one month after the return of the indictment and three months after the arrest, he posed as a pharmaceuticals salesman and met with Moschiano. Moschiano negotiated with Kazmar in order to buy Preludin tablets, an amphetamine, for the cost of $50,-000. During his conversations with Kazmar, Moschiano made a number of statements concerning his previous heroin sale and September arrest, but the government did not seek to use these at trial. The Preludin transaction was never completed.

The Seventh Circuit noted that Moschiano's claim was not directly controlled by *Massiah* because his "post indictment statements concerning the proposed purchase of Preludin tablets involved a separate crime (and thus could have been included in a separate or superseding indictment), but were offered into evidence at the trial on the charges in the indictment pending at the time of the Preludin negotiations." 695 F.2d at 241. The court held that Moschiano was not deprived of his Sixth Amendment right to counsel by the admission of evidence of statements relating to a separate crime.

## ANALYSIS OF LISENBY'S CLAIM

■ In Lisenby's case, the charge of misdemeanor possession of marijuana in the

truck and the felony charges of conspiracy to possess with intent to distribute and possession with intent to distribute constitute separate and distinct offenses. While in reality the marijuana residue in the truck and the bales in the warehouse may have had the same source, there is no evidence of that in this record. The marijuana truck residue was not introduced in the trial.[2] Separate offenses does not mean unrelated offenses. The offenses in *Hoffa, Missler* and *Grieco* were all, in a sense, related, yet are clearly separate. Because Lisenby's offenses probably involve portions of the same controlled substance does not make them any less distinct than those in *Hoffa.*

■ Further, Lisenby was not tried and the incriminating statements thus not introduced, for the misdemeanor charge he had been arrested for at the time the statements were made. Like Hoffa, Lisenby is attacking his subsequent conviction on other charges. The Sixth Amendment right to counsel attaches once adversary proceedings have been commenced, *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), but it attaches as to *those* adversary proceedings and not other offenses.

To give credence to Lisenby's Sixth Amendment claim would be to immunize any person who has been arrested. *Massiah* does not prohibit investigations in connection with other suspected activity or only allow such subsequent investigation in the extremely rare case where the activities are wholly unrelated. During the investigation of any prolonged conspiracy, involving numerous individuals, many acts of a criminal nature may be committed. An arrest for such a substantive offense is not grounds for exempting an individual from investigation for subsequent crimes or participation in the ongoing conspiracy. The admission of statements made after the initial arrest in the trial for a subsequently charged distinct offense is not contrary to *Massiah.*

2. The government, however, did attempt to introduce the marijuana residue from the truck in the trial, but the trial judge excluded it.

## CONCLUSION

The district court was correct in its refusal to suppress the conversations recorded by Vern Oblisk and the convictions of Amos Lisenby are AFFIRMED.

GODBOLD, Chief Judge, dissenting, with whom KRAVITCH, Circuit Judge, joins.

This is a troubling decision. It is obvious that there must be a "separate offense" exception to *Massiah*. But the "separate offense" exception does not fit this case. The opinion of the court says that the offenses are separate. It does not tell us why they are separate. In *Hoffa* the separate offense was a charge of jury tampering that had arisen from events occurring during Hoffa's trial on Taft-Hartley law charges. In *Missler* the separate offense was obstruction of justice by the defendant who, indicted on a hijacking charge, put out a contract to kill a co-defendant who defendant thought had sung to the police. In *Grieco* the primary charge was murder, and the separate offense was an offer to pay a prisoner to confess to the murder. In each of these cases the two offenses arose from separate operative facts.

In contrast, in the present case the operative facts overlap, and indeed all the facts of the misdemeanor possession charge are included within the conspiracy charge. Police engaged in surveillance of a marijuana conspiracy that involved bringing marijuana by boat to Panama City, Florida, where it was unloaded onto the dock and trucked to a warehouse near Panama City. There it was to be secreted for some 24 hours and then taken elsewhere by truck. While the marijuana was in the warehouse, Lisenby was arrested in what was described as the "vicinity of the warehouse," at 1:00 a.m., by an officer surveilling the warehouse, who saw Lisenby, alone and hot and sweaty, drive up, get out of his truck, and then pass out of sight. The officer found marijuana on the bumper of the truck and then marijuana inside the truck. The next day Lisenby was arrested on a charge of misdemeanor possession of marijuana. Before he was arrested officers asked the prosecutor what charge to make,

and they were instructed to charge Lisenby with misdemeanor possession because the evidence was not sufficient to connect him with the marijuana in the warehouse. Lisenby retained counsel, who notified the prosecutor of his representation. The prosecutor told defense counsel that he expected to get an indictment against Lisenby on the conspiracy charge. Later, officers secured from Lisenby, in the absence of his attorney, statements incriminating him in the conspiracy, including his participation in unloading the marijuana on the dock and transporting it to the warehouse. The misdemeanor charge was dismissed. The incriminating statements were introduced against Lisenby at his trial on the conspiracy charge.

The prosecution was considerably closer to this case than are we appellate judges. It understood that the offenses were not "separate." After Lisenby was indicted on the conspiracy charge, he asked for a bill of particulars, and the government responded with a copy of the complaint on which he had been arrested on the possession charge. Before the conspiracy trial began, a pretrial hearing was conducted in which the judge considered the admissibility of both the marijuana found in the van and of the incriminating tapes. The government contended that the "van marijuana" was admissible to show Lisenby's participation in the conspiracy, i.e., the marijuana in the van in the vicinity of the warehouse circumstantially linked Lisenby to the marijuana within the warehouse. The judge pointed out to the government that if he so ruled the tapes would be inadmissible under *Massiah*. He then relieved the government from the consequences of its understanding of the facts and its theory of the case by permitting the tapes to be introduced and excluding the validly seized van marijuana that the government wished to introduce to help tie Lisenby to the conspiracy. The trial judge—like the government—did not assert that the two offenses were separate; rather, he thought that the government should not be permitted to urge inconsistent theories of admissibility for the marijuana and the tapes; so he cut the baby in half.

He could, and should, have allowed the van marijuana in evidence (as the government asked) and excluded the tapes. Instead he did the opposite; he excluded the van marijuana and admitted the tapes. This ruling stood *Massiah* on its head.

Differing views of judges about what is the same offense and what are separate offenses under the facts of a particular case is hardly, by itself, a subject for en banc consideration. I am not certain what standards should govern principled decision making where a court must apply *Massiah* to a defendant on trial for conspiracy who previously has been criminally charged for an act that is part of the conspiracy, and, while he has counsel on that earlier charge, the government has interrogated him in the absence of his counsel concerning the ongoing conspiracy and has elicited from him statements that incriminate him in the conspiracy. I had hoped that en banc consideration would give us some standards. It has not. Rather the court disposes of the case by thrusting it into a convenient pigeonhole into which it does not fit.

Nor has the court faced a second troubling issue. After Lisenby was arrested and his Sixth Amendment right to counsel had triggered, his activity in the conspiracy ceased insofar as the record shows. His activity thereafter was brought about by the government, which arranged for the informer to meet with Lisenby in the absence of his counsel and to seek Lisenby's assistance in getting evidence against a third party that would tie the third party to the conspiracy (by the third party's paying the informer money owed for helping in the conspiracy). While engaged in this endeavor Lisenby made the incriminating statements in question. *Massiah* required the presence of counsel unless Lisenby was engaged in a separate offense. The government brought itself within the "separate offense" exception by instigating activity by Lisenby, in the absence of his counsel, that caused him to resume his terminated role in the conspiracy. This issue is not squarely within *Massiah,* nor is it entrapment. But arguably it is within the concept of governmental overreaching. I regret that the court has not seen fit to address this question.

CLARK, Circuit Judge, dissenting.

I agree with Chief Judge Godbold, the district court and the prosecutor [1] that these were not separate and distinct offenses. The majority opinion cannot make them separate by saying they are. Amos Lisenby, unlike Hoffa, Missler, and Grieco, did not embark upon subsequent criminal activity. He was solicited to attend the meeting with his brother and government informer Oblisk by telephone calls from Oblisk [2] at the instigation of the government. The recorded inculpatory statements then furnished the prosecutor with the evidence necessary to convict Amos Lisenby. *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

---

1. "Lisenby retained counsel, who notified the prosecutor of his representation. The prosecutor told defense counsel that he expected to get an indictment against Lisenby on the conspir-

acy charge." Chief Judge Godbold's dissent at 1360.

2. Oblisk called the Lisenby brothers fourteen times at the direction of the government.