The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

HYUN SOO SON, Defendant-Appellee.

No. 85SA344.

Supreme Court of Colorado, En Banc.

Aug. 25, 1986.

Barney Iuppa, Dist. Atty., Daniel H. May, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Theodore A. Borrillo, Denver, for defendant-appellee.

DUBOFSKY, Justice.

In this interlocutory appeal, the People challenge a ruling of the El Paso County District Court suppressing evidence in a prosecution for bribery brought against the defendant, Hyun Soo Son. The district court suppressed the evidence on the grounds that it was the product of improper conduct and communication between agents of the prosecution and the defendant in violation of the defendant's rights to due process and effective assistance of counsel. We reverse the judgment of the district court in part and affirm in part.

## I.

The events culminating in the bribery prosecution began on February 17, 1982, when the defendant gave $300 as a gift to Dennis Blowers, a detective with the Colorado Springs Police Department. On November 26, the defendant allegedly gave Blowers $500 in exchange for information about the defendant's application for a liquor license for a new restaurant. On August 4, 1983, the defendant met with Blowers and asked for help in continuing a criminal misdemeanor charge that had been filed against the defendant the preceding November. Blowers testified that prior to the August 4 meeting he was aware that Anthony Johnson, an attorney, was representing the defendant in a civil matter involving the defendant's restaurant, the Korea House Lounge. At the meeting the defendant told Blowers that Johnson was representing him on the misdemeanor charge. In response to the defendant's request for help with the charge, Blowers told the defendant that he knew of someone in a higher position who might be of assistance. Blowers arranged for the defendant to meet with Gary Shupp, a member of the district attorney's office who had been assigned to assist in building a bribery case against the defendant.

According to Johnson, the defendant's attorney, Shupp called him on August 10 and told him that he intended to have dinner at the Antlers Restaurant with the defendant that evening. Johnson testified that he told Shupp that "he could go to dinner with whomever he pleased but that he was not to talk about my cases." Shupp testified that he did not recall this statement. Shupp attended the meeting at the Antlers Restaurant as planned, bringing with him the file on the misdemeanor case that was pending against the defendant. After dinner, Shupp reviewed with the defendant the documents in the file and ex-

plained to him the procedure that would be followed at trial.

Shupp and Blowers continued to meet and communicate with the defendant after the August 10 dinner. At these meetings the defendant allegedly paid Shupp and Blowers to have misdemeanor cases pending against him or his employees dismissed. Johnson entered his appearance as counsel for the defendant in at least one of these cases.[1] At one point, the defendant expressed the fear that if the misdemeanor case in which Johnson had entered an appearance were dismissed, Johnson might discover the arrangement between the defendant and Shupp. Shupp responded that he would have an explanation if Johnson contacted him.

On February 24, 1984, the defendant was cited for serving drinks to minors. The defendant called Blowers and explained to him that the February 24 citation was without foundation. When the defendant mentioned that he had not yet told his attorney of the charge, Detective Blowers responded by telling him "No—don't—don't—don't take it to your lawyer yet...."

The defendant was charged with 12 counts of bribery under section 18-8-302(1)(a), 8 C.R.S. (1978), based upon the incidents described above. The defendant moved to dismiss the counts or to suppress evidence pertaining to the communications between the defendant and Shupp or officers of the Colorado Springs Police Department. The defendant asserted that the communications violated his fifth amendment right to due process and his sixth amendment right to effective assistance of counsel. He also argued that dismissal or suppression was warranted because Shupp's conduct violated the code of professional ethics.

After a hearing on the motion the district court found that Johnson had warned Shupp on August 10, 1983 not to discuss with the defendant any cases in which Johnson was the defendant's attorney. The court ruled that Shupp's communication with the defendant on and after August 10 violated the defendant's rights to due process of law and to effective assistance of counsel and constituted a breach of professional ethics on Shupp's part. As a sanction for prosecutorial misconduct the court excluded all evidence pertaining to the communications between the defendant and Shupp on and after August 10, 1983. The district court further ruled that Detective Blowers' effort to dissuade the defendant from talking to his attorney on February 28, 1984, violated the defendant's fifth and sixth amendment rights. Accordingly, the court suppressed all evidence reflecting communications between the defendant and Blowers on and after February 28.[2]

## II.

We first consider whether the district court properly suppressed evidence pertaining to the bribery charges on the ground that Deputy District Attorney Shupp's communication with the defendant constituted an impermissible interference with the defendant's sixth amendment right to counsel. The reasoning and decisions of the United States Supreme Court in *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), and in *Maine v. Moulton*, —— U.S. ——, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), resolve this issue.

The *Hoffa* case involved a trial in which the former president of the International Brotherhood of Teamsters, James "Jimmy" Hoffa, was charged with violating the Taft-Hartley Act. During the course of the trial, a government informer insinuated himself into private meetings between Hoffa and a local Teamsters official and between Hoffa and defense counsel. At the meetings between Hoffa and the local official the informer learned of their efforts to

---

1. The record on appeal is not sufficiently clear for us to delineate the nature of the various misdemeanor charges or which charges were the subject of particular counts in the bribery information.

2. The district court did not specify the evidence to be excluded. Instead, the court advised the People to file an interlocutory appeal of its general ruling.

bribe the jury sitting in Hoffa's trial. Hoffa and the local official subsequently were convicted of attempted bribery largely on the basis of the informer's testimony.

On appeal Hoffa argued that the informer's intrusion into the private strategy sessions between Hoffa and his counsel was an infringement of his right to counsel that could be redressed only by excluding from the bribery trial any evidence obtained by the informer as a result of his presence at the meetings. The Court assumed without deciding that the government's use of the informer violated Hoffa's right to counsel and observed that if the first trial "had resulted in a conviction instead of a hung jury, the conviction would presumptively have been set aside as constitutionally defective." 385 U.S. at 307, 87 S.Ct. at 416. However, the Court refused to hold that suppression of the informer's testimony from the bribery trial was required, stating that

> Even if it were ... arguable that a situation could be hypothesized in which the government's previous activities in undermining a defendant's Sixth Amendment rights at one trial would make evidence obtained thereby inadmissible in a different trial on other charges, the case now before us does not remotely approach such a situation.

> This is so because of the clinching basic fact in the present case that none of the petitioner's incriminating statements which [the informer] heard were made in the presence of counsel, in the hearing of counsel, or in connection in any way with the legitimate defense of the [first] prosecution. The petitioner's statements related to the commission of a quite separate offense—attempted bribery of the jurors—and the statements were made to [the informer] out of the presence of any lawyers.

> Even assuming, therefore, as we have, that there might have been a Sixth Amendment violation which might have made invalid a conviction, if there had been one, in the [first] case, the evidence supplied by [the informer] in the present

case was in no sense the "fruit" of any such violation.

385 U.S. at 308, 87 S.Ct. at 416.

The United States Supreme Court implicitly affirmed the result in *Hoffa* in *Maine v. Moulton*. Moulton and his co-defendant retained counsel to represent them on theft charges. Unbeknown to Moulton or to counsel, the co-defendant agreed to cooperate with the police by passing on to them information obtained in private conversations with Moulton. The information, in the form of recordings of the conversations, related to the theft charges as well as to burglary, arson, and three additional thefts. After Moulton was convicted of the original theft charges he appealed to the Supreme Judicial Court of Maine. That court remanded the case for a new trial, holding that the state could not use against Moulton evidence derived from conversations that the state knew or should have known would lead to incriminating statements by Moulton regarding the charges pending at the time of the conversations. The Supreme Court affirmed the judgment of the Maine court. However, the Court limited its holding, stating that

> to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. Consequently, incriminating statements pertaining to *pending charges* are inadmissible at the trial of *those charges*, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the state violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel.

—— U.S. at ——, 106 S.Ct. at 490. (Emphasis added; footnote omitted.) In a footnote the Court re-emphasized that "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible

at a trial of those offenses." —— U.S. at ——, 106 S.Ct. at 490 n. 16.

Decided between *Hoffa* and *Moulton* were a number of lower court cases reflecting uniform recognition of the principle that even where the state arguably violates the sixth amendment by improperly communicating with a defendant who has retained counsel on pending charges, the sixth amendment does not require exclusion of evidence derived from the communications from a new trial on separate charges. *See, e.g., Mealer v. Jones,* 741 F.2d 1451 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1871, 85 L.Ed.2d 164 (1985) (dictum); *United States v. Grego,* 724 F.2d 701 (8th Cir.1984); *United States v. Lisenby,* 716 F.2d 1355 (11th Cir.1983); *United States v. Badolato,* 710 F.2d 1509 (11th Cir.1983); *United States v. Calhoun,* 669 F.2d 923 (4th Cir.1982), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469; *United States v. Osser,* 483 F.2d 727 (3d Cir.1973), *cert. denied,* 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321; *United States v. Missler,* 414 F.2d 1293 (4th Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970); *United States v. Diamond,* 492 F.Supp. 583 (D.Md.1980).[3]

■ *Hoffa, Moulton,* and the other cases discussed above require us to reject the defendant's argument that evidence of alleged bribery derived from Shupp's communication with the defendant must be excluded from the bribery prosecution as the fruit of a sixth amendment violation. Here, any interference on the part of Shupp with the defendant's right to counsel related to the only sixth amendment right that was "attached" to the defendant at the time of the communications, his right to counsel on the misdemeanor charges.[4] The evidence of bribery sought to be introduced by the People pertains to offenses separate from the misdemeanor charges. Accordingly, the district court erred in excluding evidence of bribery by the defendant obtained as a result of communications between the defendant and Shupp.

### III.

■ The district court found that Shupp's communication with the defendant constituted a breach of professional ethics requiring the suppression of all evidence derived from that communication. The court relied on DR7–104(A)(1) of the Code of Professional Responsibility, which provides that

> During the course of his representation of a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Numerous cases have applied DR7–104(A)(1) to prosecutors and their agents in the context of criminal proceedings. *See People v. Rubanowitz,* 688 P.2d 231 (Colo. 1984); *see generally* Annot., 26 A.L.R. 4th 102. However, those cases, including the cases relied on by the defendant in this portion of his argument, involve a situation in which a defendant had retained counsel in connection with a criminal charge and agents of the prosecution attempted in the absence of counsel to obtain information or

---

**3.** *Mealer v. Jones, United States v. Missler,* and *United States v. Diamond* are particularly instructive for present purposes because these cases, like *Hoffa v. United States,* involved prosecutions for bribery founded on uncounseled statements by defendants in pending criminal cases.

**4.** While the United States Supreme Court has not specified the precise moment when the sixth amendment right to counsel on particular charges comes into play, the Court has recognized that the right "attaches only at or after the initiation of adversary judicial proceedings against the defendant." *United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984). *See also Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The right does not begin to operate simply because a person is the suspect in or a focal point of a particular investigation. *See Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). *See generally* Y. Kamisar, W. La Fave, J. Israel, *Modern Criminal Procedure,* ch. 3, sec. 4 at 160 (1980).

elicit potentially incriminating statements from the defendant pertaining to the pending charge.

Under the significantly different circumstances presented here the district court's exclusion of evidence is not justified. There is no evidence in the record that Shupp or any other member of the district attorney's office intended to obtain from the defendant any information relevant to the charges for which he had retained counsel. And, there is no evidence in the record nor any indication in the defendant's brief that the district attorney's office benefited in prosecuting the misdemeanor charges from Shupp's communication with the defendant.

To hold that DR7–104(A)(1) is violated by any communication between a defendant who has obtained counsel on pending charges and agents of the prosecution would preclude prosecutorial agents from investigating possible obstructions of justice such as jury tampering, bribery, or intimidation of witnesses. Accepting the defendant's interpretation of DR7–104(A)(1) would convert the rule into a shield of immunity from investigation for subsequent criminal acts committed by a defendant who has acquired the services of counsel in connection with a criminal charge. We decline to construe DR7–104(A)(1) in such a manner, and therefore we conclude that the rule provides no basis for the exclusion of evidence of bribery derived from communication between Shupp and the defendant.[5]

## IV.

■ Detective Blowers' attempt on February 24, 1984, to dissuade the defendant from contacting his attorney differs from the other conduct at issue in this appeal. While the state had a legitimate interest in pursuing the bribery investigation of the defendant notwithstanding the defendant's representation by counsel on the misdemeanor charges, the bribery investigation was subject to the constraints of the sixth amendment and to standards of professional conduct. Efforts by police officers or prosecutors to steer the target of potential criminal charges away from consultation with an attorney cannot be justified as a legitimate part of a criminal investigation. As stated by Chief Judge Godbold, specially concurring, in *United States v. Weiss*, 599 F.2d 730, 741 (5th Cir.1979), "The citizen's choice of, and relation with, his attorney is none of the investigating government's business. It does not become the government's business because it fears the citizen will tell his attorney of his conversation with government counsel." The district court properly excluded evidence obtained by the police officer after the officer told the defendant not to talk to his attorney. Accordingly, we affirm the district court's suppression of evidence of transactions between Blowers and the defendant on and after February 24, 1984.[6]

Ruling affirmed in part and reversed in part.

5. Counsel for the defendant suggests that the charges here are the result of prosecutorial agents' taking advantage of the defendant's unfamiliarity with the language and customs of this country. The suggestion is irrelevant to resolution of the issues before us in this interlocutory appeal.

6. The district court ruled that the defendant's statements were obtained in violation of "both the fifth and sixth amendment due process clause and the sixth amendment right to coun-

sel." We assume that the reference to the "sixth amendment due process clause" was a misstatement on the part of the district court. The district court made no finding of fact that arguably could form the basis for a fifth amendment violation, nor does the defendant advance any fifth amendment argument other than the assertion that the conduct of the police and the district attorney's office in this case violated his right to due process.